682 P.2d 469

**In the Matter of the ESTATE OF Kenneth Allen HOOVER, deceased.**

**Linda Lou HOOVER, Plaintiff-Appellant,**

v.

**FIRST INTERSTATE BANK, formerly First National Bank of Arizona, Personal Representative as Constructive Trustee and as Trustee of the Kenneth Allen Hoover Family Trust, Defendant-Appellee.**

**No. 1 CA–CIV 6237.**

Court of Appeals of Arizona, Division 1, Department D.

May 1, 1984.

Werner, Roberts & Parry, Ltd. by Dean J. Werner, Mesa, for plaintiff-appellant.

Fennemore, Craig, von Ammon, Udall & Powers, P.C. by Timothy Berg, Nancy L. Rowen, Cynthia S. Thorpe, Phoenix, for defendant-appellee First Interstate Bank.

Friedman & Caldwell by Mark R. Caldwell, Steven M. Friedman, Phoenix, for intervener Steven Hooper.

### OPINION

KLEINSCHMIDT, Judge.

■ This case presents the question of whether a conviction for manslaughter committed by "recklessly causing the death of another person" conclusively establishes that the convicted person "feloniously and intentionally" killed another within the meaning of A.R.S. § 14–2803(A) so that the slayer is precluded from succeeding to any property interest of the victim. We hold that such a conviction is not conclusive and that the probate court must determine whether Linda Hoover, the appellant in this case, intentionally killed her husband.

Many of the facts set forth below are taken from information that emerged in the criminal proceedings brought against the appellant. They are not a part of the record in this case. Since this opinion does not turn upon the facts we include them only as background. The probate court, of course, was presented with the record of appellant's conviction for manslaughter.

The marriage of Kenneth and Linda Hoover was not a happy one. One day in October of 1979, Linda, after an ongoing quarrel with her husband, loaded a handgun and wrote a suicide note. A struggle ensued in which the gun was fired at various angles. Both Linda and Kenneth were shot. Kenneth died of three bullet wounds to the chest. Linda survived.

There is some evidence that Linda suffers from retrograde amensia but she purports to remember awakening with her husband lying on top of her. She called the police and as she was being removed to the hospital she made the statement that all she wanted was to make her husband stop beating her.

Linda Hoover was indicted for first degree murder and ultimately pled guilty to a charge of manslaughter, a class 3 felony, a violation of A.R.S. § 13–1103(A). That statute, as it pertains to this case, provides:

A. A person commits manslaughter by:

1. Recklessly causing the death of another person; or

2. Committing second degree murder as defined in § 13–1104, subsection A upon a sudden quarrel or heat of passion resulting from adequate provocation by the victim; ....

The second degree murder statute, A.R.S. § 13–1104(A)(3), reads:

Under circumstances manifesting extreme indifference to human life, such person recklessly engages in conduct which creates a grave risk of death and thereby causes the death of another person.

"Recklessly" as that term is used throughout the criminal code is defined in A.R.S. § 13–105(5)(c) as meaning:

[W]ith respect to a result or to a circumstance described by a statute defining an offense, that a person is aware of and consciously disregards a substantial and unjustifiable risk that the result will occur or that the circumstance exists. The risk must be of such a nature and degree that disregard of such risk constitutes a gross deviation from the standard of conduct that a reasonable person would observe in the situation.

At the time the plea of guilty was entered the trial court established a factual basis for it but did not specify whether the crime was committed under subsection A(1) or subsection A(2) of A.R.S. § 13–1103. When Linda Hoover was sentenced she told the judge that she had intended to kill herself but had not intended to hurt her husband.

The appellee, First Interstate Bank, as personal representative of the Estate of Kenneth Hoover, petitioned the probate court for a determination that Linda Hoover was prevented from succeeding to any of her husband's property interests. The petition was based on the terms of Arizona's so-called "slayer's statute". That statute, A.R.S. § 14–2803(A), precludes one who "feloniously and intentionally" kills another from receiving any of the property of his victim by will, intestacy, as the beneficiary of a life insurance policy or as a surviving joint tenant. Subsection E of the statute reads:

A final judgment of conviction of felonious and intentional killing is conclusive for purposes of this section. In the absence of a conviction of felonious and intentional killing the court may determine by a preponderance of evidence whether the killing was felonious and intentional for purposes of this section.

The probate court concluded that a conviction for manslaughter under any section of A.R.S. § 13–1103 conclusively brings the slayer's statute into play. It thus held that as a matter of law Linda Hoover cannot succeed to any of her late husband's property.

While the appellant has chosen to subdivide her argument into somewhat overlapping parts we synthesize it as follows. She says that summary judgment was improper because there remains a disputed question of fact as to whether or not she killed her husband intentionally. She believes that she is entitled to a trial to resolve this issue. She proceeds to argue, based on the case of *Estate of Kramme*, 20 Cal.3d 567, 143 Cal.Rptr. 542, 573 P.2d 1369 (1978), that the intentional commission of a reckless act remains mere negligence not rising to the level of intent necessary to trigger the slayer's statute.

The bank disagrees. It says that a conviction for manslaughter under A.R.S. § 13–1103 is conclusively a "conviction of felonious and intentional killing" within the meaning of the slayer's statute. It points out that one can commit manslaughter either by recklessly causing the death of another or by committing second degree murder upon a sudden quarrel resulting from adequate provocation. A.R.S. § 13–1103(A). It assumes that the latter grounds would clearly trigger the slayer's statute so it is to an analysis of "recklessly", as that term is used in A.R.S. § 13–1103(A)(1), that the bank directs its argument.

The bank contends that since it is the purpose of the slayer's statute to "[prevent] a wrongdoer from profiting by his own wrong," "recklessly" as used in A.R.S. § 13–1103(A), the manslaughter statute, is the equivalent of "intentionally" as used in the slayer's statute. It cites *In re Estate of Josephsons*, 297 N.W.2d 444, (N.D.1980) for the proposition that the manner in which the term "felony" was used in the criminal code does not control the meaning of "felonious" as used in North Dakota's slayer's statute. In that case the court held that a juvenile who killed his parents could not inherit even though juvenile convictions are not considered felonies. The bank proceeds to argue, based upon the comment to the Uniform Probate Code § 2–803, Uniform Laws Annotated, from which our slayer's statute was adopted, that our legislature intended to exclude from the operation of the slayer's statute only those persons who killed accidentally.

The next step in the bank's argument is that "recklessly" causing the death of another is not the same thing as an "accidental manslaughter killing" as that term is used in the Uniform Probate Code comment. It says that the distinction between accidental manslaughter and non-accidental manslaughter is reflected in our criminal code's distinction between negligent homicide, as defined in A.R.S. § 13–1102, and manslaughter, as defined in A.R.S. § 13–1103(A)(1). Negligent homicide is homicide committed with "criminal negligence" which is defined in A.R.S. § 13–105(5)(d) as a failure to perceive a substantial and unjustifiable risk that a result will occur or that a circumstance exists. This, says the bank, is the same concept as "accidental manslaughter killing." It points out that Colorado's slayer's statute is a version of the Uniform Probate Code which specifically prevents one who slays "recklessly" from succeeding to the victim's property but allows one who kills "negligently" to inherit. The bank suggests we should promote uniformity by interpreting our code in the same manner Colorado's legislature drafted their statute.

To cap its argument the bank urges that we look to how the term "intentional" is used in other civil contexts. Citing the *Restatement (Second) of Torts* § 8A, comment b (1965) it points out that intent is not limited to consequences which are desired but includes those which are certain or substantially certain to result from a specific act. Since a reckless wrongdoer is one who is defined in A.R.S. § 13–105(5)(c) as a person who is aware of and consciously disregards a substantial and unjustifiable risk the result will occur, such person, the bank argues, acts "intentionally" as that term is used in the civil sense.

■ The bank's argument is an ingenious one but we reject it. At common law a person who killed another was not prevented from inheriting from his victim. *In re Duncan's Estates*, 40 Wash.2d 850, 246

P.2d 445 (1952); 26A C.J.S. *Descent and Distribution* § 47b (1956). If the legislature wants to change the common law the intent to do so must be clearly and plainly expressed. *Schwartz v. Schwartz,* 7 Ariz. App. 445, 440 P.2d 326 *vacated on other grounds,* 103 Ariz. 562, 447 P.2d 254 (1968); *In re Vadlamudi Estate,* 183 N.J.Super. 342, 443 A.2d 1113 (1982) (construing a slayer's statute). If the legislature had wanted to preclude those whose reckless acts resulted in the death of another from inheriting from the victim it would have been easy enough to say so. In fact, as the appellee has noted, the Colorado legislature did just exactly that. *See* and *compare* Colorado Rev.Stat. § 15–11–803 and § 18–3–104.

There are several cases which suggest the conclusion we reach. *Estate of Kramme, supra,* involved the construction of the California Probate Code, which prohibited inheritance by one who "intentionally caused the death of a decedent" or caused the death in the course of the commission of certain enumerated felonies. A husband accosted his wife's lover with a shotgun. The lover grabbed the gun which went off and killed the wife. The husband pled nolo contendere to involuntary manslaughter which was not one of the felonies enumerated under the statute. The California court refused to equate reckless conduct with intentional conduct, which it defined as conduct in which the actor either desired the result or knew to a substantial certainty that the result would ensue. This definition of intentional conduct is similar to the concept cited by the bank from the *Restatement (Second) of Torts* § 8A, comment b (1965) to the effect that intended results encompass those which are substantially certain to ensue from specific conduct. This concept is something more than the disregard of a substantial risk that a result will ensue.

The case of *In re Estate of Klein,* 474 Pa. 416, 378 A.2d 1182 (1977), is also of interest. The Pennsylvania slayer's statute precluded inheritance by one who participated in the "willful and unlawful killing of any other person." The court concluded that in using "willful" the legislature intended to designate a higher degree of culpability than that required for involuntary manslaughter. Involuntary manslaughter, in Pennsylvania, required only that the death ensue as the consequence of committing an unlawful act or a lawful act in an unlawful way. The court concluded that a killing was "willful" under the slayer's statute if it was committed intentionally or with malice. It recognized that malice sufficient to support a charge of murder in the absence of an intent to kill could be found where the perpetrator consciously disregarded an unjustified and extremely high risk that his actions might cause death or serious bodily harm. It went on to say that such a high degree of recklessness involves a greater degree of culpability than the recklessness or gross negligence which form the basis of involuntary manslaughter.

While the statutory scheme in *In re Estate of Klein* is not identical to our own there are some parallels in it that are suggestive. "Recklessly" under our statute means the conscious disregard of a substantial risk that a result will ensue. A.R.S. § 13–105(5)(c). Thus, the language of our manslaughter statute sounds like the language of Pennsylvania's statute that would permit a conviction for murder for reckless conduct. This, at least on the surface, would permit an argument that reckless conduct can be so close to willful conduct, which in turn can be equated to intentional conduct, as to preclude inheritance in Arizona by one who kills recklessly. A look at our own statutory scheme, however, undermines that argument, at least with respect to the subsection of the manslaughter statute to which the parties principally address themselves.

As we have already noted, Arizona's second degree murder statute, A.R.S. § 13–1104(A) provides:

A person commits second degree murder if without premeditation:

. . . .

(3) *under circumstances manifesting extreme* indifference to human life, such person *recklessly* engages in conduct which creates a grave risk of death and thereby causes the death of another person. (emphasis added.)

Thus our legislature has defined a crime, second degree murder, that can be committed recklessly but that requires a higher degree of "recklessness" than does manslaughter. It appears to us that an argument could be made that the highest degree of reckless culpability as referred to in the murder statute can be equated with intentional killing as that term is used in the slayer's statute. If that were the case the rationale of *In re Estate of Klein* would lead to the result we reach here, i.e., that the recklessness which will support a manslaughter conviction under A.R.S. § 13–1103(A)(1) is something less than an intentional killing.

Both the bank's argument and our own analysis of the semantics involved point up the fact that one must go to considerable lengths to make "recklessly" under A.R.S. § 13–1103(A)(1) mean "intentionally." The completion of that exercise leaves one in considerable doubt as to the intent of the legislature on that point. This case must be remanded to the trial court for a determination on the preponderance of the evidence of whether the appellant killed her husband intentionally. It seems to us entirely possible that this question will be answered one way or another on facts that will permit the trier of fact to determine, by a preponderance of the evidence, without reference to nuances of the criminal statutes, whether or not the appellant intended to kill her husband. We therefore leave to another day the question of whether one who commits second degree murder pursuant to A.R.S. § 13–1104(A)(3) is precluded from inheriting by the terms of the slayer's statute.

The judgment of the probate court is vacated. This cause is remanded for a hearing to determine whether Linda Hoover intentionally killed her husband.

HAIRE and OGG, JJ., concur.