806 P.2d 870

James D. WYATT and Donna K. Wyatt, Husband and Wife; Clinton E. Wolf and Joann P. Wolf, Husband and Wife; John W. Russell and Patty A. Russell, Husband and Wife; Joseph Soldevere and Jane M. Soldevere, Husband and Wife; the Glendale Industrial Air Park Associates, an Arizona General Partnership; and Pacific General Investment Group, Ltd., an Arizona Corporation; and Richard N. Brandes, Plaintiffs–Appellants,

v.

James WEHMUELLER and Jane Doe Wehmueller, Husband and Wife; Phillip Polich and Jane Doe Polich, Husband and Wife; James Overfield and Jane Doe Overfield, Husband and Wife; Glendale Airport Partners, an Arizona General Partnership; Title USA, Inc., Formerly Known as U.S. Life Title, Inc., a Foreign Corporation; and Z & H Engineering, an Arizona Corporation, Defendants–Appellees.

No. CV–89–0421–PR.

Supreme Court of Arizona, En Banc.

Feb. 28, 1991.

Brandes, Lane & Joffe, P.C. by Richard N. Brandes, Phoenix, for plaintiffs-appellants.

Mariscal, Weeks, McIntyre & Friedlander, P.A. by James T. Braselton and Michael S. Rubin, Phoenix, for defendants-appellees.

## OPINION

GORDON, Chief Justice.

Plaintiffs/appellants petitioned for review of a court of appeals' decision affirming the trial court's assessment of damages against plaintiffs pursuant to A.R.S. § 33–420(A) and attorney's fees against counsel pursuant to A.R.S. § 12–349. We review only the assessment of damages against plaintiffs.[1] *See* Rule 23, Ariz.R. Civ.App.P., 17B A.R.S. We have jurisdiction pursuant to Ariz. Const. art. 6, § 5(3), and A.R.S. § 12–120.24.

### FACTUAL AND PROCEDURAL HISTORY

Plaintiffs contracted on August 20, 1985 to purchase a large parcel of property from defendants/appellees, Glendale Airport Partners (GAP). GAP took back a promissory note and deed of trust on the property as part of the purchase price.

On June 17, 1987, plaintiffs sued in Maricopa County Superior Court alleging they contracted to purchase sixty net usable acres from GAP but received only fifty-six acres. The prayer for relief sought compensatory damages, prejudgment interest, costs, and attorney's fees, but no form of equitable relief. The complaint stated that plaintiffs were not in default under the note at the time of filing. Apparently, after filing the complaint, plaintiffs failed to make an installment payment, thereby going into default.

On June 28, 1987, GAP caused a notice of trustee's sale to be issued and recorded pursuant to A.R.S. § 33–808. On October 21, plaintiffs filed an application for a temporary restraining order, an order to show cause, and a preliminary injunction to prevent the trustee's sale. Plaintiffs asserted that GAP's failure to convey sixty usable acres caused their default under the note and that equity should restrain the trustee's sale under such circumstances. By minute entry dated October 26, the trial court denied plaintiffs' application, finding neither irreparable injury nor a reasonable likelihood of success on the merits.

On the morning of October 29, the date of the scheduled trustee's sale, plaintiffs' attorney recorded a Notice of Lis Pendens

---

1. We originally granted review on both issues. After reviewing the record, however, we determined that review was improvidently granted on the issue of attorney's fees against counsel and that portion of the order is now vacated.

and filed a copy in the trial court without notifying plaintiffs. The lis pendens stated in part:

> 2. The object of the action is that the Plaintiffs seek under the theories of breach of contract, negligence, breach of fiduciary duty and fraud, damages in an amount to be determined, and allege that the Notice of Trustee's Sale, filed July 28, 1987 with the Maricopa County Recorder's Office is invalid and that any sale thereby occurring is also void and invalid, and title to said real property will remain with current titleholder or his nominee, all of which pertain to the real property described below herein.

GAP filed a Motion to Quash Lis Pendens on November 2, and requested an expedited hearing, arguing that the recording of the lis pendens created hardship. The motion asserted that the action supporting the lis pendens was not one "affecting title to real property" within the meaning of A.R.S. § 12–1191 because plaintiffs' underlying complaint sought only monetary damages.

The trial court heard oral argument by telephone on November 3 and granted the motion to quash. Plaintiffs were given two weeks to respond to the request for damages and attorney's fees. On November 23, the trial court ruled the lis pendens violated A.R.S. § 12–1191 and was groundless, because it was recorded in an action seeking only monetary damages and therefore did not affect title to real property. The court also found that the lis pendens misrepresented the object of the action. By stating that the title to the property was affected, the lis pendens contained a "material misstatement" of plaintiffs' actual claims. Moreover, the court found that plaintiffs' attorney filed the lis pendens knowing that the document was groundless and contained a material misstatement. The trial court then granted GAP judgment against plaintiffs for $5,000 pursuant to A.R.S. § 33–420 and judgment against plaintiffs' counsel for attorney's fees of $2,762 pursuant to A.R.S. §§ 12–349 and 33–420. The court of appeals affirmed. 163 Ariz. 12, 785 P.2d 581. Plaintiff petitioned this court for review and raised five issues. We review only the following issue:

> Can damages be assessed against a client pursuant to A.R.S. § 33–420(A) when an attorney files a lis pendens without the client's knowledge or consent?

## DISCUSSION

Plaintiffs contend both lower courts incorrectly applied § 33–420(A), and that subsection C should apply because their attorney unilaterally filed the lis pendens without their knowledge or consent. Section 33–420(A) provides:

> A person purporting to claim an interest in, or a lien or encumbrance against, real property, who causes a document asserting such claim to be recorded or filed in the office of the county recorder, knowing or having reason to know that the document is forged, groundless, contains a material misstatement or false claim or is otherwise invalid is liable to the owner or beneficial title holder of the real property for the sum of not less than five thousand dollars, or for treble the actual damages caused by the recording or filing, whichever is greater, and reasonable attorney fees and costs of the action.

The court of appeals affirmed the trial court's assessment of damages under § 33–420(A), stating that the attorney's decision to file the lis pendens was a normal and routine tactical decision concerning the litigation. Reasoning that the statute does not require that the "person purporting to claim an interest" have specific knowledge of or authorize the filing, the court held that plaintiffs were liable for their attorney's actions. As a result of its findings under subsection A, the court of appeals did not address subsection C. Likewise, we do not address subsection C.

Plaintiffs do not dispute that counsel was their agent and had authority to act on their behalf in filing the lis pendens. They claim, however, that § 33–420(A) applies only when the principal instructs the agent to file a lis pendens; only then can the principal be said to knowingly cause the

recording of the lis pendens. According to plaintiffs, § 33–420(C) applies to this case because it supersedes agency law by providing a separate subsection for relief when an agent records an invalid document without the principal's knowledge. However, they argue sanctions in this case are improper under subsection C because the principal was not given notice of the wrongful recording and an opportunity to release the invalid document.

GAP counters that the statute does not abrogate, or even change, the common law of agency in this situation. Under agency law principles, plaintiffs are responsible for their attorney's actions. Although plaintiffs did not personally file the lis pendens, they vested the authority to do so in their attorney and therefore "caused" the filing. The statutory requirement that the party "knowingly" cause the filing is satisfied because agency law imputes the attorney's knowledge to the client. Under plaintiffs' interpretation, GAP alleges, it is left with no statutory remedy because neither the client nor the attorney may be held liable. Plaintiffs' interpretation would allow an attorney to insulate a client simply by acting without the client's express consent.

### 1. *Statutory construction*

■ Under rules of statutory construction, if the common law is to be changed, supplemented, or abrogated by statute, it must be done expressly or by necessary implication. *S.H. Kress & Co. v. Superior Court,* 66 Ariz. 67, 73, 182 P.2d 931, 935 (1947). If the legislature fails to clearly and plainly manifest an intent to alter the common law, the common law remains in effect. *United Bank v. Mesa N.O. Nelson Co.,* 121 Ariz. 438, 442, 590 P.2d 1384, 1388 (1979); *In re Estate of Hoover,* 140 Ariz. 464, 467, 682 P.2d 469, 472 (App.1984).

■ The primary principle of statutory interpretation is to determine and give effect to legislative intent. When a statute's words do not disclose legislative intent, the court must read the statute as a whole, and give meaningful operation to all of its provisions. *Kriz v. Buckeye Petroleum Co.,* 145 Ariz. 374, 377, 701 P.2d 1182, 1185

(1985); *see Peterson v. Flood,* 84 Ariz. 256, 259, 326 P.2d 845, 847 (1958). To find legislative intent, an appellate court may consider many different factors. These factors include the context of the statute, the language used, the subject matter, its historical background, its effects and consequences, and its spirit and purpose. *Martin v. Martin,* 156 Ariz. 452, 457, 752 P.2d 1038, 1043 (1988). A court also should interpret two sections of the same statute consistently, especially when they use identical language. *State v. Oehlerking,* 147 Ariz. 266, 268, 709 P.2d 900, 902 (App. 1985).

A.R.S. § 33–420 requires a knowing violation before its sanctions will be imposed. A person is liable under § 33–420(A) only if he causes a document to be recorded or filed *"knowing or having reason to know* that the document is ... groundless...." (Emphasis added.) The statute thus imposes liability on the claimant (*i.e.,* the client instead of the lawyer) for causing the filing of a lis pendens *only* if he knows or has reason to know the lis pendens claim is invalid. A showing of the client's scienter is required. The statute's text is inconsistent with GAP's contention that, although plaintiffs did not personally undertake the filing of the lis pendens, under agency law rules they caused the filing of the lis pendens by virtue of the authority they vested in their attorney by hiring him. GAP's construction would allow a violation of the statute by imputed knowledge, which is not what the statute intended when it used the words "knowing or having reason to know."

■ Common law agency principles hold that an attorney, by virtue of the attorney-client relationship, has implied authority to perform acts incident or necessary to the purpose for which he was retained, including the day-to-day tactical decisions involved in the litigation process. *United Farm Bureau Mut. Ins. Co. v. Groen,* 486 N.E.2d 571, 573 (Ind.App.1985); *see also Garn v. Garn,* 155 Ariz. 156, 160, 745 P.2d 604, 608 (App.1987); 7A C.J.S. *Attorney & Client* § 191 (1980). Section 33–420(A) abrogates this common law principle, by nec-

essary implication, and requires scienter on the part of the client if he is to be held responsible for his attorney's acts.

GAP argues that this interpretation will allow an attorney to insulate his client from liability by failing to inform the client of his intended actions. In fact, a client in this situation will be insulated only from sanctions he does not deserve; that is, where he lacks the requisite scienter to cause the attorney's actions. Here, the sanctions are undeserved because the client did not have the requisite scienter to cause the filing of a wrongful lis pendens.

■ When subsection A is read in conjunction with other provisions of A.R.S. § 33–420, it again appears that the statute requires that liability be imposed only for knowing violations. Subsection E uses the exact scienter language[2] as subsection A and makes the filing of a groundless lis pendens a class 1 misdemeanor, a criminal offense. Because the scienter element of a criminal charge cannot be satisfied by imputed knowledge, 1 W. LaFave & A. Scott, *Substantive Criminal Law* § 3.9, at 354 (1986), the scienter requirement in subsection E of the statute cannot be satisfied by imputed knowledge. Thus, because the two subsections must be interpreted consistently, we must construe the statute such that neither subsection can be violated by one whose "guilt" is based only on imputed knowledge.[3]

### 2. *Nature of the damages*

■ The nature of the damages also indicates that imputed knowledge is not enough for damages to be imposed under § 33–420(A). The statute imposes a minimum of $5,000 damages even if no actual damages have occurred; where actual damages have occurred, they must be trebled.

The statute then requires that the higher of the two be awarded, plus attorney's fees and costs. Well-settled doctrine holds that punitive damages are non-compensatory in nature and therefore are not designed to compensate for any actual injury. *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 266–67, 101 S.Ct. 2748, 2759, 69 L.Ed.2d 616 (1981) ("Punitive damages by definition are not intended to compensate the injured party, but rather to punish the tortfeasor whose wrongful action was intentional or malicious, and to deter him and others from similar extreme conduct."); *International Bhd. of Elec. Workers v. Foust*, 442 U.S. 42, 48, 99 S.Ct. 2121, 2125, 60 L.Ed.2d 698 (1979) (quoting *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 350, 94 S.Ct. 2997, 3012, 41 L.Ed.2d 789 (1974)) ("Punitive damages 'are not compensation for injury. Instead, they are private fines levied by civil juries to punish reprehensible conduct and to deter its future occurrence.' ").

■ Treble damages may be compared to punitive damages because they generally serve the purpose of punishing the wrongdoer. Arizona common law requires a showing of malice to obtain an award of punitive damages. Punitive damages serve as a penalty for evil-minded conduct that is something more than gross negligence. *Rawlings v. Apodaca*, 151 Ariz. 149, 161–62, 726 P.2d 565, 577–78 (1986). A plaintiff may prove the element of evil mind by showing either evil actions; malicious motives; or outrageous, intolerable or oppressive conduct that results in a high risk of great harm to others. *Gurule v. Illinois Mut. Life & Casualty Co.*, 152 Ariz. 600, 602, 734 P.2d 85, 87 (1987). A plaintiff must be entitled to actual damages before being entitled to punitive damages. *Hub-*

---

**2.** Subsection E provides:

A person purporting to claim an interest in, or a lien or encumbrance against, real property, who causes a document asserting such claim to be recorded or filed in the office of the county recorder, *knowing or having reason to know* that the document is forged, groundless, contains a material misstatement or false claim or is otherwise invalid is guilty of a class 1 misdemeanor. (Emphasis added.)

**3.** Additionally, we note that the statute does not expressly provide for liability based on imputed knowledge. Had the legislature wished to impose imputed liability it easily could have done so expressly. *See, e.g.,* A.R.S. § 12–661(A) ("Any act of malicious or wilful misconduct of a minor ... shall be imputed to the parents or legal guardian....").

*bard v. Superior Court,* 111 Ariz. 585, 586, 535 P.2d 1302, 1303 (1975).

■ The damages available under § 33–420 are punitive in nature. GAP argues that common law agency principles should be applied in order to allow recovery of these damages. However, it is improper to use common law agency principles to recover punitive damages when the common law would not allow such recovery without actual damages and the statute clearly requires scienter on the part of the wrongdoer. Common law agency principles regarding the granting of punitive damages do not apply when a statute specifically allows for the trebling of actual damages. In fact, comment c to the Restatement (Second) of Agency § 217 C (1958) specifically says: "[t]he rule stated in this Section does not apply to the interpretation of special statutes such as those giving triple damages, as to which no statement is made." Agency principles restrict recovery to actual damages unless some participation, or at least acquiescence, is shown on the part of the principal.[4]

Therefore, the language of a statute that allows for a monetary award over and above actual damages incurred, specifically treble damages, removes it from the realm of common law analysis and necessitates interpreting the words "knowing or having reason to know" as requiring scienter on the part of the wrongdoer. Thus, the statute does not authorize GAP's claim for damages against the plaintiffs because the plaintiffs did not know and had no reason to know that their attorney filed an invalid lis pendens.

Additionally, a line of Arizona cases refuses to impose punitive sanctions on a client for the procedural misconduct of his attorney. *See Treadaway v. Meador,* 103 Ariz. 83, 436 P.2d 902 (1968); *Robinson v. Higuera,* 157 Ariz. 622, 760 P.2d 622 (App.

1988); *Birds Int'l Corp. v. Arizona Maintenance Co.,* 135 Ariz. 545, 662 P.2d 1052 (App.1983). In these cases, default judgments were imposed upon the clients under Rule 37(b)(2), Ariz.R.Civ.P., 16 A.R.S., a discovery rule. The court distinguished default judgments under Rule 60(c), Ariz.R. Civ.P., 16 A.R.S. and Rule 37(b)(2). It stated:

> Under [Rule 60(c)], the neglect of an attorney is attributed to the client and only when the attorney's omission or failure to act is legally excusable may relief be obtained. [citation omitted.]
>
> We do not think, however, that Rule 37(b)2(iii), supra, *where it is used as a sanction* for failure to answer interrogatories, should, in the interest of justice, be so rigidly enforced....

*Treadaway,* 103 Ariz. at 84, 436 P.2d at 903 (emphasis added). Thus, because the default judgments involved in these cases operated as sanctions, the courts refused to hold the clients vicariously accountable for the attorneys' misconduct. Because the penalties imposed under § 33–420 also operate as sanctions, imputed liability should not be recognized unless compelled by the words of the statute.

Finally, besides punishing the wrongdoer, punitive damages also are awarded to deter wrongdoers and others from similar misconduct. *See generally* 1 L. Schlueter & K. Redden, *Punitive Damages* 24–28 (2d ed. 1989). The purpose of § 33–420 is to protect property owners from actions clouding title to their property. The statute seeks to achieve this purpose by deterring individuals from knowingly filing groundless lis pendens claims. If the underlying rationale is deterrence rather than compensation of actual loss, the punitive nature of § 33–420 militates against permitting the scienter requirement to be satisfied by imputed knowledge. If the law-

---

**4.** The Restatement allows punitive damages under certain narrow, specific situations:

§ 217 C. Punitive damages

Punitive damages can properly be awarded against a master or other principal because of an act by an agent if, but only if:

(a) the principal authorized the doing and the manner of the act, or

(b) the agent was unfit and the principal was reckless in employing him, or

(c) the agent was employed in a managerial capacity and was acting in the scope of employment, or

(d) the principal or a managerial agent of the principal ratified or approved the act.

Restatement (Second) Agency § 217 C (1958).

yer is guilty and the client innocent, the lawyer may be punished, and deterred, by an award of attorney's fees to be paid by him personally. In this case, the trial court awarded attorney's fees of $2,762 pursuant to A.R.S. §§ 12–349 and 33–420. *See also* Rule 11, Ariz.R.Civ.P., 16 A.R.S. (court may impose appropriate sanction if pleading, motion, or paper is signed in violation of rule). There is, however, no deterrent value in a rule that punishes an unknowing, innocent client.

## CONCLUSION

We hold that damages may not be assessed against a client pursuant to A.R.S. § 33–420(A) when an attorney files a lis pendens without the client's knowledge or consent. We vacate that portion of the court of appeals' opinion granting damages to GAP pursuant to § 33–420(A) and reverse the trial court's award of damages.

FELDMAN, V.C.J., CAMERON J., and TRUMAN, Judge, concur.

Justice Robert J. Corcoran recused himself and did not participate in this decision; pursuant to Ariz. Const. art. 6, § 3, Judge Alice Truman of the Pima County Superior Court was designated to sit in his stead.

MOELLER, Justice, dissenting.

I respectfully dissent. The obvious intent of A.R.S. § 33–420(A) is to provide some relief to property owners who are victimized by the wrongful filing of documents that cloud their title. The trial court, the court of appeals, and this court all agree that the lis pendens filed in this case was groundless and asserted a false and unsupportable claim. Indeed, the trial court's finding that the lis pendens was filed in bad faith to harass defendants is unchallenged here. Also unchallenged is the fact that plaintiffs' attorney filed the lis pendens for plaintiffs' benefit and that the attorney had authority to act on plain-

tiffs' behalf in filing it. *See* at 283, 806 P.2d at 872. These facts are unchallenged because they are unchallengable. The lis pendens was filed solely for plaintiffs' benefit and its filing had its exact intended effect.

Still, the majority concludes that plaintiffs are not subject to damages under § 33–420(A) because their lawyer filed an affidavit stating that he did not tell his clients when he filed the lis pendens. The affidavit is wholly silent as to whether the attorney continued to keep his clients in ignorance during the litigation to remove the lis pendens.

Under the majority's holding, although plaintiffs benefit from the filing of the lis pendens, they are immune from any liability for filing a wrongful lis pendens. Although the lawyer's act in filing the lis pendens does not bind plaintiffs, that same lawyer's act in filing an affidavit is deemed adequate to wholly exonerate plaintiffs from liability. The majority's holding effectively repeals A.R.S. § 33–420(A). The lawyer is not liable because he claims no interest in the property. The client is not liable because he claims ignorance of his attorney's actions. Such claims of client ignorance will usually be uncontrovertible because the attorney-client privilege precludes discovery of the facts.

The lis pendens statute, A.R.S. § 12–1191(A),[5] grants to a *plaintiff* or to a *defendant*, not to their lawyers, the right to file a lis pendens when pending litigation affects title to their real property. Because a lis pendens is always ancillary to litigation, the lawyer, not the client, usually files the lis pendens. In the future, only lawyers who have not read the majority opinion in this case will tell their clients when they file a lis pendens, for to do so will break the shield of immunity this court has now created for uninformed clients.

---

5. A. In an action affecting title to real property, *plaintiff* at the time of filing the complaint, or thereafter, and *defendant* at the time of filing his pleading when affirmative relief is claimed in such pleading, or thereafter, may file in the office of the recorder of the county in which the property is situated a notice of the pendency of the action or defense. The notice shall contain the names of the parties, the object of the action or affirmative defense, the relief demanded and a description of the property affected. A.R.S. § 12–1191(A) (emphasis added).

The majority acknowledges that "Common law agency principles hold that an attorney, by virtue of the attorney-client relationship, has implied authority to perform acts incident or necessary to the purpose for which he was retained, including the day-to-day tactical decisions involved in the litigation process." At 284, 806 P.2d at 873. I agree with this statement and the legion of cases supporting it. I cannot, however, agree with the majority's conclusion that the legislature, in enacting A.R.S. § 33–420(A), intended to abrogate these universally recognized common law principles. Absent any contrary indication, the legislature must be presumed to intend that the usual common law rules of imputation of knowledge from agent to principal apply. I simply fail to see in the language of the statute *any* suggestion of intent to abrogate the common law, or to exempt from the statute those entities, such as corporations, which can act only through agents.

I also find unpersuasive the majority's reliance on default judgment cases arising under procedural court rules. The majority correctly notes that in some cases this court has held that the sins of an attorney should not be visited upon a client in the form of a default judgment. Those cases, however, are inapposite to the present case. First, a default judgment is truly penal in nature and is far harsher than a legislative remedy of treble damages with a modest alternative of liquidated damages. Second, how this court chooses to apply sanctions to clients for their lawyers' violations of court-created and court-enforced rules of court procedure is of little or no materiality here. The legislature has considered the problem of wrongful filing of lis pendens and has prescribed a measured and appropriate remedy. This court should follow that statute.

Finally, I note that the majority's opinion is founded solely upon its interpretation of the statute and invokes no constitutional overtones. Accordingly, as the majority notes (footnote 3, at 285, 806 P.2d at 874),

the legislature, if it so chooses, may correct the "problem" found by the majority.