NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

T. P. RACING, L.L.L.P., *Plaintiff/Appellant*,

*v.*

ARIZONA DEPARTMENT OF GAMING, et al., *Defendants/Appellees*.

No. 1 CA-CV 22-0224
FILED 12-15-2022

Appeal from the Superior Court in Maricopa County
No. LC2021-000324-001
The Honorable Daniel J. Kiley, Judge

**AFFIRMED**

COUNSEL

Gust Rosenfeld, PLC, Phoenix
By Craig L. Keller
*Co-Counsel for Plaintiff/Appellant*

Peebles Kidder LLP, Arvada, CO
By Conly J. Schulte, *Pro Hac Vice* (argued)
*Co-Counsel for Plaintiff/Appellant*

Fennemore Craig, PC, Phoenix
By Patrick Irvine (argued)
*Co-Counsel for Defendants/Appellees*

Arizona Attorney General's Office, Phoenix
By Lena Kalkbrenner
*Co-Counsel for Defendants/Appellees*

---

**MEMORANDUM DECISION**

Judge Paul J. McMurdie delivered the Court's decision, in which Presiding Judge Brian Y. Furuya and Judge Jennifer B. Campbell joined.

---

**M c M U R D I E**, Judge:

¶1         T.P. Racing, L.L.L.P. ("TP Racing"), appeals the denial of its application for an event wagering operator license. We find no reversible error and affirm.

### FACTS AND PROCEDURAL BACKGROUND

¶2         In April 2021, the Arizona Legislature enacted the Event Wagering Act ("Act"), A.R.S. §§ 5-1301 through 5-1321. The Act authorizes the Arizona Department of Gaming ("Department") to issue up to ten event wagering operator licenses[1] to non-Indian tribe applicants. A.R.S. § 5-1304(A). Such applicants must be either the "owner of an Arizona professional sports team or franchise," the operator of a sports facility that hosts an annual PGA Tour event, the promotor of a NASCAR race held in Arizona, or the owner's, operator's, or promoter's designee. A.R.S. § 5-1304(A)(1).

¶3         In August 2021, TP Racing applied for an event wagering operator license. In its application, TP Racing asserted that it owns a professional sports franchise because it owns the horseracing venue Turf Paradise. It relied partly on the Department's website, which states that in 1956, "Turf Paradise opened its doors becoming one of Arizona's first

---

[1]        An event wagering operator license allows the licensee to accept wagers on sports or other events. A.R.S. § 5-1301(4)(a); *see also* A.R.S. § 5-1303(A) (license required to conduct event wagering).

sports franchises." TP Racing also claimed to own a sports franchise because it holds a permit from the Department to conduct racing meetings.

¶4 The Department denied TP Racing's application. It explained that, *inter alia*, TP Racing failed to show it owned an Arizona professional sports team or franchise and did not meet the statutory definition of "professional sport." TP Racing appealed, and the administrative law judge recommended the Department affirm the denial. The Department adopted the administrative law judge's decision. TP Racing then filed a complaint for judicial review.

¶5 In its order, the superior court found that TP Racing failed to establish that horseracing is a professional sport because TP Racing does not race its horses or participate in organizational play. The court also concluded that TP Racing does not own a professional sports team or franchise because a sports franchise is either the team or the right to field a team, neither of which TP Racing owns. As a result, the court affirmed the Department's denial of TP Racing's application.

¶6 TP Racing appealed, and we have jurisdiction under A.R.S. §§ 12-120.21(A)(1) and 12-913.

**DISCUSSION**

¶7 We review *de novo* the superior court's judgment. We must determine "whether the administrative action was not supported by substantial evidence or was illegal, arbitrary and capricious, or involved an abuse of discretion." *Carlson v. Ariz. State Pers. Bd.*, 214 Ariz. 426, 430, ¶ 13 (App. 2007). We accept the agency's findings of fact but apply our independent judgment to questions of law, such as questions of statutory interpretation. *Id.*

¶8 For TP Racing to qualify for licensure under A.R.S. § 5-1304(A)(1), it must show that it is the "owner of an Arizona professional sports team or franchise." Because TP Racing does not claim to own a team, our analysis hinges on whether it owns a professional sports franchise. Neither "franchise" nor "sports franchise" is defined by statute. *See* A.R.S. § 5-1301.

¶9 TP Racing makes two distinct arguments: 1) TP Racing owns Turf Paradise, a professional sports franchise because the Department has long called it such, and 2) TP Racing owns a horseracing permit, a professional sports franchise because the right to conduct commercial horseracing cannot be exercised without express permission from the State.

## A. The Department's Website Does Not Dictate the Statutory Meaning of "Franchise."

¶10 TP Racing first argues that the Department was bound to conclude that Turf Paradise is a sports franchise because the Department has long called it that. The Department's website says that in 1956, "Turf Paradise opened its doors becoming one of Arizona's first sports franchises."[2]

¶11 TP Racing cites *Smiley v. Citibank (S. Dakota), N.A.*, 517 U.S. 735, 742 (1996), to argue that the Department's "sudden and unexplained change in position" is arbitrary, capricious, or an abuse of discretion. But the Supreme Court in *Smiley* explained that "the mere fact that an agency interpretation contradicts a prior agency position is not fatal." *Id.* And the Court determined that one statement in the case—a letter from an agency official—was "too informal" to "be described as a change of official agency position." *Id.* at 742–43. Likewise, a website blurb about the history of horseracing in Arizona is too informal to bind the Department.

¶12 TP Racing also contends that the online description is admissible against the Department as an opposing party's statement under Arizona Rule of Evidence 801(d)(2). That rule applies only to the admissibility of factual statements and does not affect questions of law. *State v. Fulminante*, 193 Ariz. 485, 492, ¶ 18 (1999). TP Racing baldly asserts that the Department's statement is a confirmed admission "that Turf Paradise is a sports franchise pursuant to A.R.S. § 5-1304(A)(1)." But whether Turf Paradise is a franchise *under the statute* is necessarily a legal question because it first requires us to determine the meaning of the statute. *See Carlson*, 214 Ariz. at 430, ¶ 13 (Statutory interpretation is a legal question.); *see also* A.R.S. § 12-910(F) (Courts must interpret statutes without deference to an agency's legal determinations.). In sum, the online statement is not relevant to our statutory interpretation.

---

[2] TP Racing describes the Department's statement as "long-standing" and "time-honored" but offered no evidence of when it first appeared on the website. In any event, TP Racing acknowledged at oral argument that the Department's website pre-dated the Act.

**B.      The Right to Conduct Commercial Horseracing in Arizona Is Not a "Franchise" under the Act.**

¶13      The parties disagree about the meaning of the statutorily undefined word "franchise." When we interpret statutes, the primary goal "is to determine and give effect to legislative intent." *Wyatt v. Wehmueller*, 167 Ariz. 281, 284 (1991). We begin by looking at the statute's plain language and give the words their ordinary meaning. *Cao v. PFP Dorsey Invs., LLC*, 253 Ariz. 552, 559, ¶ 26 (App. 2022). "Words in statutes, however, cannot be read in isolation from the context in which they are used." *J.D. v. Hegyi*, 236 Ariz. 39, 41, ¶ 6 (2014); *see also Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 (1997) ("The plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole."). If the language is subject to only one reasonable interpretation, we apply that meaning. *Baker v. Univ. Physicians Healthcare*, 231 Ariz. 379, 383, ¶ 8 (2013). But if the statute is "reasonably susceptible to differing interpretations," we determine its meaning by considering secondary factors. *Premier Physicians Grp., PLLC v. Navarro*, 240 Ariz. 193, 195, ¶ 9 (2016). Such factors include "the context of the statute, the language used, the subject matter, its historical background, its effects and consequences, and its spirit and purpose." *Wyatt*, 167 Ariz. at 284.

¶14      TP Racing argues that, as relevant to A.R.S. § 5-1304(A)(1), a franchise is an exclusive right granted by the State, such as its permit to conduct racing meetings. The Department does not dispute, and we agree, that "franchise" has been defined, among other definitions, as "the privilege of doing something which does not belong to all citizens as a matter of common right." *Franchise*, *Ballentine's Law Dictionary* (3d ed. 2010). And in Arizona, the right to conduct racing meetings does not exist without the grant of a permit. *See* A.R.S. § 5-107.01(A) (permit required to conduct racing meetings); *see also Ariz. Downs v. Ariz. Horsemen's Found.*, 130 Ariz. 550, 557 (1981) (legislature "has plenary power" over commercial horseracing in Arizona). TP Racing also notes that other jurisdictions refer to the right to conduct horseracing as a "franchise." *See, e.g.*, Ark. Code Ann. §§ 23-110-301 to -308; N.Y. Rac. Pari-Mut. Wag. & Breed. Law §§ 201–257. And although TP Racing concedes that our legislature labels this right as a "permit," *see* A.R.S. § 5-107, it urges us to consider that "permit," "license," and "franchise" are synonymous in several other legal contexts.

¶15      We, however, must read the words in "the context in which they are used." *J.D.*, 236 Ariz. at 41, ¶ 6. The context surrounding the Act shows that the legislature did not intend "franchise" to mean "permit," as

relevant to the subject matter of the Act. The Act is codified as Chapter 11 under Title 5 of the Arizona Revised Statutes. Within Title 5, the legislature repeatedly describes the right to conduct racing meetings as a "permit." *See, e.g.*, A.R.S. §§ 5-101, 5-107 to -112. And aside from the clause at issue, the legislature only uses "franchise" in Title 5 to refer to "major league baseball franchises" and a "professional football franchise." A.R.S. §§ 5-801, -815, -1139.

**¶16**    The legislature uses each of the two words consistently. "Permit" refers to a right granted by the State; "Franchise" relates to ownership of a sports team. And we presume that words "bear the same meaning throughout a text." *Trisha A. v. Dep't of Child Safety*, 247 Ariz. 84, 88, ¶ 17 (2019) (citing Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 170 (2012)). Similarly, where a text "has used one term in one place, and a materially different term in another, the presumption is that the different term denotes a different idea." Scalia & Garner, *supra*, at 170; *see also id.* at 172 (The presumption of consistent usage applies across different code sections.).

**¶17**    TP Racing contends that "franchise" cannot relate to ownership of a sports team here because the statute refers to ownership of a "team or franchise." *See* A.R.S. § 5-1304(A)(1). TP Racing argues that "franchise" must mean something other than "team"; otherwise, "franchise" would be redundant. We agree with the premise. We must "give meaning, if possible, to every word and provision so that no word or provision is rendered superfluous." *Nicaise v. Sundaram*, 245 Ariz. 566, 568, ¶ 11 (2019). "Franchise," therefore, is not synonymous with "team."

**¶18**    Yet, in giving meaning to every word, we cannot simply conclude that "franchise" does not mean "permit" or "team." "Franchise" must mean something. The Department suggests we adopt the *Black's Law Dictionary* definition of "sports franchise." *Black's* defines "franchise" in relevant part as "[t]he business or territory controlled by the person or entity that has been granted such a right." *Franchise*, *Black'*s *Law Dictionary* (11th ed. 2019). In that regard, "sports franchise" is defined as either 1) "A franchise granted by a professional sports league to field a team in that league" or 2) "The team itself." *Id.*

**¶19**    The Department's argument is persuasive. First, it is uncontested that ownership "of an Arizona professional sports team or franchise" requires ownership of either a professional sports team or a professional sports franchise. *See* Scalia & Garner, *supra*, at 147 ("When there is a straightforward, parallel construction that involves all nouns . . .

in a series, a prepositive or postpositive modifier normally applies to the entire series."). And both *Black's* definitions of a "sports franchise" would apply consistently with the context of A.R.S. § 5-1304 and the Act as a whole. As discussed, however, "sports franchise" cannot mean "sports team," thus precluding the applicability of the second definition. We, therefore, conclude that a "franchise" under A.R.S. § 5-1304 is the right "granted by a professional sports league to field a team in that league." *See Franchise*, *Black's* *Law Dictionary* (11th ed. 2019).

¶20    TP Racing responds that this interpretation improperly limits licensing eligibility to team sports, arguing that the statutory definition of "professional sport" expressly includes individual sports. *See* A.R.S. § 5-1301(14) (Professional sports include, e.g., golf and motorsports.). But this argument ignores that the definition of "professional sport" applies elsewhere in the Act. *See, e.g.*, A.R.S. § 5-1311(A)(3) (Professional sports players and their family members may not apply for a license.). Thus, the inclusion of individual sports in the definition of "professional sport" does not preclude an interpretation that "professional sports team or franchise" relates only to teams.

¶21    To be eligible for licensure under A.R.S. § 5-1304(A)(1), TP Racing would have to show that it is the owner of a professional sports team or the right to field a team. It does not claim either. Because we conclude that TP Racing is ineligible for an event wagering operator license on this ground, we need not decide whether horseracing is a professional sport. *See Progressive Specialty Ins. Co. v. Farmers Ins. Co.*, 143 Ariz. 547, 548 (App. 1985) (Appellate courts generally should not decide questions unnecessary to the disposition of the appeal.).

**CONCLUSION**

**¶22**        We affirm.[3]



AMY M. WOOD • Clerk of the Court
FILED:    AA

---

[3]        TP Racing requests an award of its attorney's fees under A.R.S. § 41-1030(E). Because TP Racing did not prevail in its appeal, we deny its request for attorney's fees. Under A.R.S. § 12-342(B), we award the Department its costs on appeal contingent on its compliance with ARCAP 21.