213 P.3d 197

Cruz Antonia Suarez **CASTRO, Personal Representative of the Estate of Dora Ema Castro Solis, Deceased, Defendant/Appellee,**

v.

Luz **BALLESTEROS–SUAREZ, a single woman, Defendant/Appellant.**

No. 1 CA–CV 08–0367.

Court of Appeals of Arizona, Division 1, Department C.

June 18, 2009.

---

Dominguez Law Firm PC by Antonio Dominguez, Phoenix, Attorneys for Defendant/Appellee.

Cantor & Simon, PLC by Stanley David Murray, Eve Parks, Tempe, Attorneys for Defendant/Appellant.

## OPINION

PORTLEY, Judge.

¶ 1 We are asked to determine whether the slayer statute, Arizona Revised Statutes ("A.R.S.") section 14–2803 (2005), can preclude the decedent's widow from collecting all or part of the proceeds from two life insurance policies. Because the slayer statute prohibits a person who is found to have feloniously and intentionally killed another from profiting by that act, we affirm.

## FACTS AND PROCEDURAL BACKGROUND

¶ 2 Adolfo F. Suarez ("Decedent") was shot to death in his home on November 29, 2004. His death was ruled a homicide.

¶ 3 His widow, Luz Ballesteros–Suarez ("Mrs. Suarez"), was a suspect in the murder and the beneficiary under his two life insurance policies. After she requested the life insurance proceeds, American Family Insurance Company and Fidelity & Guaranty Life Insurance Company filed separate interpleader actions. Both noted that Decedent's mother, Dora Castro, had been the previously named beneficiary, and requested the superior court to determine who should receive the insurance proceeds.

¶ 4 Mrs. Suarez answered both actions and denied any involvement in her husband's death. She also filed unsuccessful motions for summary judgment to recover the proceeds. The insurance companies were subsequently dismissed after they deposited the insurance proceeds with the clerk of the court, the cases were consolidated, and Cruz Antonia Suarez Castro ("Ms. Castro"), the Decedent's sister and the personal representative of her mother's estate, was substituted for her mother.

¶ 5 During the ensuing discovery, Mrs. Suarez unsuccessfully attempted to prevent her deposition from being taken and to preclude any questions about her knowledge of or involvement in her husband's death based on her Fifth Amendment privilege against self-incrimination. Mrs. Suarez also filed a motion for partial summary judgment and argued that she was entitled to one-half of the life insurance proceeds because the premiums had been paid from a community account. Ms. Castro responded and affirmatively argued that Decedent did not sign the American Family change of beneficiary form. She also petitioned the court to find that Mrs. Suarez was criminally accountable for the felonious and intentional killing of Decedent.

¶ 6 The trial court conducted a bench trial in January 2008. Mrs. Suarez and her adult son, Miguel Carrasco, were called to testify and, other than identifying themselves, invoked their Fifth Amendment right to remain silent.

¶ 7 The court subsequently found that the American Family change of beneficiary form was a forgery and, as a result, it had no legal effect. Consequently, Decedent's mother's estate was still the beneficiary of the American Family policy.

¶ 8 The court also found that Fidelity's change of beneficiary form had been properly executed and Mrs. Suarez was the beneficiary. The court then examined the facts against the slayer statute and found that:

[Mrs. Suarez's] invocation of her privilege against self-incrimination gives rise to an inference that she was involved in and is responsible in whole or in part for the murder of Adolfo Suarez as a matter of fact.

[Ms.] Castro's un-rebutted testimony that [Mrs. Suarez] offered her money if she would help [her sister-in-law] go against [Ms.] Castro's family and not oppose her attempt to obtain the insurance proceeds on [the Decedent's] life buttresses the allowable inference that [Mrs. Suarez] was involved in the murder of her husband.... The Court finds that, because of the allowable inferences the Court can make from [Mrs. Suarez's] taking the Fifth Amendment when questioned about the murder of Adolfo Francisco Suarez, and the forgery of the American Family Life change of beneficiary form, the preponderance of the evidence in this civil case is that Defendant, Luz Ballesteros–Suarez would be found guilty of the intentional and felonious killing of Adolfo Francisco Suarez.

Therefore, the Court finds in favor of Defendant, [Ms.] Castro as the personal representative of the estate of her mother, Dora [Ema] Castro, which is entitled to receive the proceeds from the two life insurance policies.

¶ 9 Mrs. Suarez filed a motion for new trial. She challenged the findings and verdict, and argued that she was entitled to her community property share of the life insurance proceeds. Ms. Castro, in response, argued that the issue was waived because Mrs. Suarez had failed to raise it in the joint pretrial statement. Mrs. Suarez replied, and subsequently filed an amended motion for new trial addressing the forgery issue and the applicability of the slayer statute.

¶ 10 The motion for new trial was denied. The court found that the statute allowed it to presume that Mrs. Suarez predeceased her husband and, as a result, she did not have any community property interest in the life insurance proceeds. The court also denied the amended motion, and signed an amended order and judgment. Mrs. Suarez filed an appeal, and we have jurisdiction pursuant to A.R.S. § 12–2101(B), (F)(1) (2003).

## DISCUSSION

### I

¶ 11 When reviewing a verdict, we review the evidence in a light most favorable to sustaining the verdict. *A.R. Teeters & Assocs., Inc. v. Eastman Kodak Co.,* 172 Ariz. 324, 328, 836 P.2d 1034, 1038 (App. 1992). "We will not set aside the [trial] court's findings of fact unless clearly erroneous, giving due regard to the opportunity of the court to judge the credibility of witnesses." *In re Estate of Zaritsky,* 198 Ariz. 599, 601, ¶ 5, 12 P.3d 1203, 1205 (App.2000). "A finding of fact is not clearly erroneous if

substantial evidence supports it, even if substantial conflicting evidence exists." *Kocher v. Dep't of Revenue of Ariz.*, 206 Ariz. 480, 482, ¶ 9, 80 P.3d 287, 289 (App.2003). Evidence is substantial if it allows "a reasonable person to reach the trial court's result." *Davis v. Zlatos*, 211 Ariz. 519, 524, ¶ 18, 123 P.3d 1156, 1161 (App.2005) (quoting *In re U.S. Currency in the Amount of $26,980.00*, 199 Ariz. 291, 295, ¶ 9, 18 P.3d 85, 89 (App. 2000)). We will not reweigh the evidence or substitute our evaluation of the facts. *Cauble v. Osselaer*, 150 Ariz. 256, 258, 722 P.2d 983, 985 (App.1986).

¶ 12 We will, however, review the trial court's legal conclusions de novo. *In re Estate of Travers*, 192 Ariz. 333, 334, ¶ 11, 965 P.2d 67, 68 (App.1998). We also review the court's interpretation of a statute de novo. *Fremont Indem. Co. v. Indus. Comm'n*, 182 Ariz. 405, 408, 897 P.2d 707, 710 (App.1995). Finally, we review a denial of a motion for new trial for an abuse of discretion. *Mullin v. Brown*, 210 Ariz. 545, 547, ¶ 2, 115 P.3d 139, 141 (App.2005).

## II

### A

¶ 13 Mrs. Suarez argues that the slayer statute [1] is inapplicable. We disagree.

¶ 14 To determine whether the statute applies, we review its plain language to find and give effect to the legislative intent. *See Mathews ex rel. Mathews v. Life Care Ctrs. of Am., Inc.*, 217 Ariz. 606, 608, ¶ 6, 177 P.3d 867, 869 (App.2008). "When statutory language is clear and unambiguous, we give effect to it and do not use other methods of statutory interpretation." *Id.* If a statute is unclear, we will "attempt to determine legislative intent by interpreting the statutory scheme as a whole and consider the statute's context, subject matter, histori-

cal background, effects and consequences, and spirit and purpose." *Id.* (quoting *State v. Ross*, 214 Ariz. 280, 283, ¶ 22, 151 P.3d 1261, 1264 (App.2007)).

¶ 15 The slayer statute, in relevant part, provides that:

A. A person who feloniously and intentionally kills the decedent forfeits all benefits under this chapter with respect to the decedent's estate, including an intestate share, an elective share, an omitted spouse's or child's share, a homestead allowance, exempt property and a family allowance. . . .

B. The felonious and intentional killing of the decedent:

1. Revokes any revocable:

(a) Disposition or appointment of property made by the decedent to the killer in a governing instrument.

. . .

2. Severs the interests of the decedent and killer in property held by them at the time of the killing as joint tenants with the right of survivorship or as community property with the right of survivorship, transforming the interests of the decedent and killer into tenancies in common.

. . .

D. Provisions of a governing instrument are given effect as if the killer disclaimed all provisions revoked by this section or, in the case of a revoked nomination in a fiduciary or representative capacity, as if the killer predeceased the decedent.

E. A wrongful acquisition of property or interest by a killer not covered by this section shall be treated in accordance with the principle that a killer cannot profit from that person's wrong.

F. . . . In the absence of a conviction, the court, on the petition of an interested

---

**1.** Before Arizona adopted its slayer statute in 1973, *see* 1973 Ariz. Sess. Laws, ch. 75, § 4 (1st Reg.Sess.), it had long been recognized that equity would prevent a person who kills another from profiting by the misdeed. *See In re Estate of Griswold*, 13 Ariz.App. 218, 220–21, 475 P.2d 508, 510–11 (1970); *see generally, Mut. Life Ins. Co. v. Armstrong*, 117 U.S. 591, 600, 6 S.Ct. 877,

29 L.Ed. 997 (1886) ("It would be a reproach to the jurisprudence of the country if one could recover insurance money payable on the death of the party whose life he had feloniously taken."); Mary Louise Fellows, *The Slayer Rule: Not Solely A Matter of Equity*, 71 Iowa L.Rev. 489, 490–91 (1986).

person, shall determine whether, under the preponderance of evidence standard, the person would be found criminally accountable for the felonious and intentional killing of the decedent. If the court determines under that standard that the person would be found criminally accountable for the felonious and intentional killing of the decedent, the determination conclusively establishes that person as the decedent's killer for purposes of this section.

A.R.S. § 14–2803.

¶ 16 The plain language of A.R.S. § 14–2803 demonstrates that the Arizona Legislature intended to prevent a person who feloniously and intentionally kills another from receiving any property belonging to his victim. *See In re Estate of Hoover*, 140 Ariz. 464, 465, 682 P.2d 469, 470 (App.1984). Any doubt about the legislative intent was resolved in the 1994 statutory amendments,[2] which provided that "the principle [is] that a killer cannot profit from that person's wrong." A.R.S. § 14–2803(E).

¶ 17 Here, the slayer statute was raised at the outset of the action after the insurance companies learned that Mrs. Suarez was a suspect in her husband's murder. Ms. Castro subsequently petitioned the court to find that Mrs. Suarez was responsible for the Decedent's death. As a result, the trial focused on whether Mrs. Suarez was responsible for her husband's murder.

¶ 18 During the trial, Detective Hawkins of the Glendale Police Department testified that the investigation led him to believe that Mrs. Suarez committed first-degree murder and other crimes against her husband to collect the insurance proceeds. Specifically, the detective testified that the investigation revealed that the Decedent and Mrs. Suarez's son had been in the home earlier that evening; that the son took the Decedent out drinking and they later returned home; that someone entered the house without force; that person shot and killed another man before shooting Decedent twice with a shotgun; that the house was not ransacked nor was anything removed; and that the blinds to Mrs. Suarez's room were open as if someone had looked out. Additionally, he testified that, in his opinion, based on the phone records, she called her son earlier in the evening, called the house at approximately 11:25 p.m. and had a short conversation; called again at 11:30 p.m., had another brief conversation and then came home. The 9–1–1 operator was called at 11:47 p.m. He also testified that in the days following the murders, Mrs. Suarez called Ms. Castro numerous times and after each conversation would immediately call her son.

¶ 19 The detective also testified that the Decedent's insurance premiums had been paid by his Wells Fargo account that was solely used for that purpose. Bank records demonstrated that only small sums were periodically deposited into the account even though the Decedent was unemployed and the mortgage payments were not being paid. Moreover, Ms. Castro testified that Mrs. Suarez offered her money to keep quiet about the life insurance policies.

¶ 20 The trial court also noted that a witness or party in a civil case can invoke their Fifth Amendment privilege against self-incrimination, *State v. Ott*, 167 Ariz. 420, 425, 808 P.2d 305, 310 (App.1990), but the trier of fact is free to infer the truth of the charged misconduct. *Buzard v. Griffin*, 89 Ariz. 42, 48, 358 P.2d 155, 158 (1961). Mrs. Suarez does not dispute the inference that she committed the crime. Instead, she challenges the sufficiency of the inferences to establish the applicability of the slayer statute.[3]

---

2. The statute was amended in 1994 to mirror the Uniform Probate Code changes. *Compare* 1994 Ariz. Sess. Laws, ch. 290, § 6 (2d Reg.Sess.), *with* Unif. Probate Code § 2–803 (amended 1993).

3. Mrs. Suarez also argues that the denials in her answers to the interpleader complaints were sufficient to rebut the inference. She did not cite to any case law supporting her proposition, and we

have found none. Accordingly, we will not further address her argument.

She also argues that the trial court improperly drew an inference from an inference, and quoted the old rule that "in order to draw an inference from an inference, the prior inference must be established to the exclusion of any other reasonable theory rather than by a probability." *Buzard*, 89 Ariz. at 47, 358 P.2d at 157. The rule, however, is no longer valid in Arizona. *See*

54

¶ 21 Although there was no direct evidence that Mrs. Suarez killed her husband, there was circumstantial evidence that she was responsible for his death; namely, the detective's testimony, the forged change of beneficiary form, and Mrs. Suarez's attempt to convince Ms. Castro not to challenge her efforts to recover the insurance proceeds. Circumstantial evidence has the same probative value as direct evidence. *Harvill*, 106 Ariz. at 391, 476 P.2d at 846. Consequently, based on all of the trial evidence, there was substantial evidence to support the trial court's conclusion by a preponderance of the evidence that Mrs. Suarez was criminally accountable for the intentional and felonious death of her husband.

**B**

¶ 22 Mrs. Suarez argues that she has to be the killer for the slayer statute to apply. We disagree.

¶ 23 Although the term "killer" is not defined, the statute equates the "killer" with one who "feloniously and intentionally kills the decedent." A.R.S. § 14–2803(A). Similarly, subsection (F) refers to the person as one who is "criminally accountable for the felonious and intentional killing of the decedent." A.R.S. § 14–2803(F); *Carrasco v. State*, 199 Ariz. 494, 497, ¶ 10, 19 P.3d 635, 638 (App.2001).

¶ 24 To determine whether one has feloniously and intentionally killed another, we, like the trial judge, look to the definitions in the criminal code for guidance. *See Carrasco v. State*, 199 Ariz. at 497, ¶ 12, 19 P.3d at 638, (criminal negligent child abuse that was likely to cause death does not even imply an intentional killing); *Estate of Hoover*, 140 Ariz. at 467–68, 682 P.2d at 472–73 (reckless manslaughter does not conclusively establish felonious and intentional killing under the slayer statute).

*Lohse v. Faulkner*, 176 Ariz. 253, 259, 860 P.2d 1306, 1312 (App.1992) (citing *State v. Harvill*, 106 Ariz. 386, 391, 476 P.2d 841, 846 (1970)); *Andrews v. Fry's Food Stores*, 160 Ariz. 93, 96, 770 P.2d 397, 400 (App.1989) (finding that our supreme court has ruled that since direct and circumstantial evidence have the same probative value, circumstantial evidence need not exclude

¶ 25 Here, Mrs. Suarez allegedly committed first-degree murder. A person commits first-degree murder if "[i]ntending or knowing that the person's conduct will cause death, the person causes the death of another person." A.R.S. § 13–1105(A)(1) (Supp.2008).[4] Our criminal code further provides that "[a] person is *criminally accountable* for the conduct of another if ... the person is an accomplice of such other person in the commission of an offense." A.R.S. § 13–303(A)(3) (Supp.2008) (emphasis added). An accomplice is defined as one who with intent to promote or facilitate the commission of an offense: (1) solicits or commands someone to commit the offense; (2) aids another in planning or committing an offense; or (3) provides an opportunity or means for another to commit the offense. A.R.S. § 13–301 (Supp.2008). An accomplice can be found guilty of homicide. A.R.S. § 13–303(B)(1). Thus, a person who solicits or commands another to cause someone's death could be found guilty of first-degree murder, or at a minimum, be held criminally accountable for such intentional killing. *See State v. Rhymes*, 129 Ariz. 56, 60, 628 P.2d 939, 943 (1981) (finding that an accomplice may be held liable under A.R.S. § 13–303(A)(3) for the substantive crime of first-degree murder).

¶ 26 Based on the facts and the guidance provided by the criminal code, the trial court did not err in finding by a preponderance of the evidence that Mrs. Suarez could be held criminally accountable for the Decedent's felonious and intentional death because either she shot him or had him shot by another to attempt to secure the life insurance proceeds.

**C**

¶ 27 Mrs. Suarez also contends that she cannot be held responsible for her husband's murder because there was no probable cause to arrest her.

every other reasonable hypothesis, and that drawing inferences from inferences is natural and inevitable).

4. We cite to the current versions of the statutes because the sections relevant to this appeal have not been materially amended.

¶ 28 The slayer statute's provisions may be invoked without having probable cause to arrest. In the absence of a criminal conviction for feloniously and intentionally killing another that has been sustained on appeal, the slayer statute can be invoked if the trier of fact finds by a preponderance of the evidence that "the person would be found criminally accountable for the felonious and intentional killing of the decedent." A.R.S. § 14–2803(F).

¶ 29 Although the Glendale Police Department did not believe it had sufficient probable cause to arrest Mrs. Suarez, the trial court found that Ms. Castro demonstrated by a preponderance of the evidence that Decedent's widow was responsible for his death. She met her burden of proof. Consequently, when the court found that the evidence established that Mrs. Suarez was criminally accountable for Decedent's felonious and intentional death by a preponderance of the evidence, it did not err.

### III

¶ 30 Mrs. Suarez argues that the slayer statute cannot defeat her community property interest in the life insurance proceeds. Although Ms. Castro argues that the issue was waived, it had been raised unsuccessfully in the motion for partial summary judgment and the motion for new trial. Additionally, Ms. Castro presented evidence at trial that demonstrated the life insurance policies were paid from a community bank account. Consequently, the issue was not waived.

¶ 31 It is undisputed that Decedent purchased both policies in October 2000; that the premiums were paid from his Wells Fargo account before and after his January 2001 marriage; that he added his wife to the account in September 2002; and the term life insurance policies did not pay dividends or have any accumulated cash value.

¶ 32 Mrs. Suarez cites three cases for the proposition that term life insurance policies

are community property. *See In re Estate of Alarcon,* 149 Ariz. 336, 718 P.2d 989 (1986);[5] *In re Estates of Spear,* 173 Ariz. 565, 845 P.2d 491 (App.1992); *Gaethje v. Gaethje,* 8 Ariz.App. 47, 442 P.2d 870 (1968). She specifically argues that *Spear* stated that the slayer statute does not abrogate community property principles.

¶ 33 We agree that *Spear* stated the general proposition that the husband who had been convicted for the murder of his wife and two sons was entitled to his share of vested community property because he "already owned an undivided one-half interest in their community property." *Spear,* 173 Ariz. at 567, 845 P.2d at 493. We did not address or determine, however, whether the life insurance policy was community property because the husband did not appeal the probate court's ruling that he was not entitled to any life insurance proceeds. *Id.*

¶ 34 Similarly, *Gaethje* did not conclude that the widow was automatically entitled to one-half of her late husband's insurance proceeds as community property. The decedent husband listed his wife as his beneficiary for the first five years of marriage and then named his son from a previous marriage as the beneficiary. *Gaethje,* 8 Ariz.App. at 48, 442 P.2d at 871. After the couple divorced and remarried each other, the son remained the beneficiary until his father's death. *Id.*

¶ 35 After we examined community property case law from other jurisdictions, and noted that the value of the term policy is measured by the proceeds and not the premiums, we remanded the case to allow the probate court to determine whether the wife agreed to the son being the beneficiary and, if not, whether the husband had left her sufficient funds equal to the value of one-half of all community and other jointly acquired property, including the insurance proceeds, before the court could determine whether there had been fraud upon the wife's rights. *Id.* at 52–53, 442 P.2d at 875–76.

5. The wife shot her husband and, after a police chase, she shot herself. *Estate of Alarcon,* 149 Ariz. at 337, 718 P.2d at 990. Because she died one-half hour before her husband, she ceased to be the beneficiary of his term life insurance policy and their community ceased to exist. Consequently, our supreme court found that her estate was not entitled to her husband's insurance death benefits. *Id.* at 339, 718 P.2d at 992.

¶ 36 Here, the trial court found that the statute treated Mrs. Suarez as if she had predeceased her husband. The court relied on A.R.S. § 14–2803(D) which provides in part that the killer is treated as having predeceased the decedent only if nominated in a fiduciary or representative capacity. Because Mrs. Suarez had not been nominated in a fiduciary or representative capacity, the court relied on the wrong subsection. We can, nevertheless, affirm the verdict if there is a basis to do so even if the court gave a wrong or insufficient reason. *See In re Sherrill's Estate*, 92 Ariz. 39, 43–44, 373 P.2d 353, 356 (1962).

¶ 37 Even if we assume, without deciding, that Mrs. Suarez was entitled to one-half of the life insurance proceeds under our community property laws, the Arizona Legislature specifically provided that a killer cannot profit from her wrong. A.R.S. § 14–2803(E). Because the Legislature statutorily created the concept of community property, *see* A.R.S. § 25–211 (Supp.2008), it has the authority to and has limited its applicability. For example, property one spouse acquires during marriage by gift, devise or descent is not community property. A.R.S. § 25–211(1). Similarly, property a spouse acquired after serving the other with a petition for divorce, legal separation or annulment, is not community property if the action is fully prosecuted. A.R.S. § 25–211(2).

¶ 38 Because the Legislature can regulate when a spouse is entitled to community property, it can also preclude one spouse who feloniously and intentionally caused the death of the other spouse from recovering any community portion of insurance proceeds. *See generally Patterson v. Mahoney*, 219 Ariz. 453, 456, ¶¶ 11–12, 199 P.3d 708, 711 (App. 2008) (stating that the Legislature has authority to pass substantive laws that create, define and regulate rights). Thus, the Legislature by mandating that the "wrongful acquisition of property or interest by a killer not covered by this section shall be treated in accordance with the principle that a killer cannot profit from that person's wrong," A.R.S. § 14–2803(E), has determined that a person who kills another shall not be entitled to any benefit from her misdeed, including

any portion of insurance proceeds. Consequently, Mrs. Suarez is not entitled to any of the Decedent's life insurance proceeds.

¶ 39 Our decision is consistent with the Restatement provision that:

[A]lthough the murderer will not be deprived of property to which he would otherwise be entitled, he will not be entitled to profit by the murder; and where it is doubtful whether or not he would have had an interest if he had not committed the murder, the chances are resolved against him. Thus, if the murderer had an interest in property contingent upon his surviving his victim, he is not entitled to keep the property, since although he survives the victim he does so as a result of the murder, and but for the murder he might have predeceased the victim, in which case he would not have been entitled to the property.

Restatement (First) of Restitution § 188 cmt. a (1937).

¶ 40 Additionally, other community property jurisdictions have reached a similar result. In *United Investors Life Insurance Co. v. Severson*, the Idaho Supreme Court examined whether the trial court properly granted summary judgment to preclude the husband from collecting any portion of the life insurance proceeds after he killed his wife. 143 Idaho 628, 151 P.3d 824, 827 (2007). The victim had changed her beneficiary provision and made her mother the beneficiary some five months before she was poisoned to death. *Id.* Severson applied for the life insurance proceeds, and the insurance company filed an interpleader action to allow the court to determine who was entitled to the proceeds. *Id.* After Severson was convicted of first-degree murder, the trial court determined that he was barred from receiving any share of the insurance proceeds and that any share should pass to the decedent's estate. *Id.*

¶ 41 The Idaho Supreme Court found that the trial court relied on the wrong statutory provision to determine that Severson would be treated as if he predeceased his victim. *Id.* at 828. Instead, the Court examined the statutory language which provided, in relevant part, "that no person shall be allowed to

profit by his own wrong, wherever committed[,]" and found that "[h]ad Severson not killed the decedent, the decedent would be alive and there would be no proceeds to receive." *Id.* at 829. "Hence, Severson would profit by the killing of the decedent if allowed to acquire any of the proceeds This does not comport with the legislature's intent." *Id.* Accordingly, the Court affirmed the determination that Severson could not recover any portion of the proceeds. *Id.*

¶ 42 Similarly, in *Aetna Life Insurance Co. v. Primofiore*, the California appellate court examined the slayer statute after the wife killed her husband and the insurance company filed an interpleader action to determine who should get the proceeds. 80 Cal.App.3d 920, 145 Cal.Rptr. 922, 923 (1978). After the killer argued that she was entitled to one-half of the proceeds "by virtue of her community status and that such vested community property right is not forfeited by her action in slaying [her husband]," *id.*, the court concluded that:

> [I]n order to carry out the declared public policy of this state that one who has deliberately and without justification killed another shall not profit thereby, when one spouse kills the other, the value of the slayer's interest in any community property must be determined as of the moment before the wrongful act was committed.

*Id.* at 926. The court then determined that the term life insurance policy had no cash value the moment before the killing and, therefore, the killer took nothing under the policy. *Id.*

¶ 43 After comparing the Restatement and the Idaho and California cases to our statutory scheme, it is clear that Mrs. Suarez did not have any community interest in the term life insurance proceeds before her husband was murdered, and had he lived there would have been nothing to collect. Consequently, the trial court correctly recognized that the slayer statute precluded Mrs. Suarez from receiving any portion of the life insurance proceeds.

## IV

¶ 44 Finally, Mrs. Suarez argues that the evidence was insufficient to establish that Decedent's signature on the American Family change of beneficiary form was a forgery. Because the forgery was a finding of fact, it is binding unless clearly erroneous or unsupported by any credible evidence. *See Zaritsky*, 198 Ariz. at 601, ¶ 5, 12 P.3d at 1205. Our review of the record reveals that there is substantial evidence which supports the court's factual determination.

¶ 45 The court found that Decedent's first name, Adolfo, was misspelled on the change of beneficiary form as "Aldolfo." The forensic document examiner, who reviewed the form with known handwriting samples, testified that she did not think Decedent would misspell his first name because he was illiterate and could only print his name. She testified that it was "highly probable" that the Decedent did not sign the change of beneficiary form and there was a "high probability" that the signature was a forgery. Her testimony, coupled with Ms. Castro's testimony that she did not recognize the signature on the American Family form as her brother's signature, was sufficient for the court to find that the form had been forged.

¶ 46 Although Mrs. Suarez challenges the finding with four different arguments, there is substantial evidence to support the finding that the signature was a forgery. Accordingly, we will not substitute our judgment for the trial court's judgment. As a result, the trial court did not err in determining that the Decedent did not sign the American Family change of beneficiary form.

## V

¶ 47 Finally, Mrs. Suarez has requested attorneys' fees on appeal pursuant to A.R.S. § 12–341.01 (2003) as the prevailing party in a matter arising out of a contract. Because she is not the prevailing party, we deny her request.

## CONCLUSION

¶ 48 Because there is substantial evidence to support the trial court's determination that Mrs. Suarez was responsible for the felonious and intentional murder of her husband, she is not entitled to any portion of his

life insurance proceeds. Accordingly, we affirm the trial court's judgment.

CONCURRING: PHILIP HALL, Presiding Judge, and MICHAEL J. BROWN, Judge.