NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

---

MOIRBIA SCOTTSDALE, LLC, *Plaintiff/Appellee*,

*v.*

JEANEEN BONNETT, et al., *Defendants/Appellants*.

No. 1 CA-CV 18-0055
FILED 1-31-2019

---

Appeal from the Superior Court in Maricopa County
No.  CV2014-051238
No.  CV2015-051261
(Consolidated)
The Honorable John R. Hannah, Jr., Judge

**AFFIRMED IN PART; VACATED IN PART; REMANDED**

---

COUNSEL

Sacks Tierney PA, Scottsdale
By Randy Nussbaum, Philip R. Rudd
*Counsel for Plaintiff/Appellee*

Tiffany & Bosco, PA, Phoenix
By Lance R. Broberg, Amy D. Sells
*Counsel for Defendants/Appellants*

---

**MEMORANDUM DECISION**

Presiding Judge Diane M. Johnsen delivered the decision of the Court, in which Judge Michael J. Brown and Judge Jennifer M. Perkins joined.

---

J O H N S E N, Judge:

¶1            Jeaneen Bonnett and 100% Natural Gourmet, Inc., dba Madison Group Consultants ("Madison") appeal a judgment entered against them for fraudulent transfer.  For the following reasons, we affirm in part, vacate in part and remand to the superior court.

## FACTS AND PROCEDURAL HISTORY

¶2            On October 3, 2012, Moirbia Scottsdale, LLC ("Moirbia") was assigned a judgment entered against Steven Goumas, Irish Restaurant and Pub Company, LLC ("Pub Company"), and My Goodness, Inc. (collectively, the "Judgment Debtors") in the principal amount of $2,042,878, plus interest.  This appeal stems from Moirbia's attempts to collect the judgment against Madison and Bonnett, who is Madison's president and director.

¶3            Goumas has been insolvent since 2010.  He was the sole member and manager of Pub Company.  Pub Company was the manager, but not a member, of Perfect Pint Holding Company, LLC ("Perfect Pint").  Pub Company's management interest in Perfect Pint, however, entitled it to receive 50% of the distributions from Perfect Pint (the "Management Interest").

¶4            Perfect Pint was the sole member of Irish Pub-Tempe, LLC ("Tempe Pub"), which owned and operated a restaurant known as "Rula Bula the Tempe Irish Pub."  The other 50% of Perfect Pint's distributions went to its various members, one of whom was Goumas, who held a 4.09% membership interest at one point.  As the manager and sole member of Pub Company, Goumas also received funds Perfect Pint distributed to Pub Company via the Management Interest.

¶5            In October 2011, Perfect Pint sold its membership interest in Tempe Pub to Boer Hospitality, LLC ("Boer") for $720,000.  In the deal, Boer paid  $360,000 cash and gave a promissory note for $360,000 (the "Boer Note").  Bonnett had loaned Boer the cash down payment, which Perfect Pint distributed to its members.  In satisfaction of Pub Company's right to

50% of Perfect Pint's distributions under the Management Interest, Pub Company acquired the Boer Note.

¶6          In August 2012, Goumas and Pub Company assigned Pub Company's Management Interest in Perfect Pint to Bonnett and Madison. Under the assignment, Bonnett and Madison received all of Pub Company's economic rights flowing from Perfect Pint, including the right to receive payments made on the Boer Note. At the time, the Management Interest constituted substantially all of Pub Company and Goumas's assets.

¶7          Thereafter, pursuant to the Management Interest, Madison received payments on the Boer Note totaling $50,333.21 and distributions of $61,054 from Perfect Pint. Separately, Goumas also assigned to Bonnett various checks (totaling $90,608.81) payable to him or entities he controlled.

¶8          This case began when Moirbia sued Bonnett, Madison, Perfect Pint, and the Judgment Debtors, alleging fraudulent transfer under Arizona Revised Statutes ("A.R.S.") section 44-1004 (2019).[1]

¶9          After a bench trial, the superior court entered lengthy findings of fact, including:

> a. The Boer Note had a value of $358,572 when the Management Interest was transferred to Bonnett and Madison, and that Bonnett and Madison became entitled to receive payment under the Boer Note at the time of the transfer.
>
> b. Pursuant to the assignment, Madison received distributions from Perfect Pint in the amount of $61,054.
>
> c. Goumas transferred a total of $153,609 to Bonnett by assigning checks payable to him or entities he controlled to Bonnett or Madison. Of those funds, $90,608.81 was transferred within the applicable four-year statute of limitations of Moirbia's complaint.

---

[1]     Absent material revision after the relevant date, we cite the current version of a statute or rule.

      d.  Goumas, Pub Company and My Goodness were insolvent or became insolvent shortly after the transfers were made.

      e.  These transfers, along with others by Goumas, constituted substantially all of Goumas, Pub Company and My Goodness's assets.

      f.  Bonnett and Madison did not receive the transfers in good faith.

**¶10**      The court concluded that Bonnett and Madison were the recipients of fraudulent transfers made by the Judgment Debtors after the entry of the judgment against Goumas and that the transfers were made with the "actual intent to hinder, delay, or defraud . . . Moirbia." The court entered judgment against Bonnett and Madison, and in favor of Moirbia, for $510,235 plus prejudgment interest of $127,732.22, post-judgment interest, and $17,493.68 in taxable costs. The $510,235 principal amount was the sum of (1) $90,609 in checks Goumas transferred directly to Bonnett after September 9, 2009; (2) $61,054 in distributions from Perfect Pint to Madison; and (3) $358,572, representing the value of the Boer Note.

**¶11**      Bonnett and Madison moved for a new trial, disputing joint and several liability. They argued the $90,609 in checks were assigned only to Bonnett, that the $61,054 in distributions were made from Perfect Pint to Madison only, and that Bonnett was not a transferee of the $358,572 Boer Note. In response, Moirbia conceded that Bonnett was the sole transferee of the $90,609 in assigned checks.

**¶12**      The superior court denied the motion, and Bonnett and Madison timely appealed. We have jurisdiction under Article 6, Section 9, of the Arizona Constitution, and A.R.S. §§ 12-120.21(A)(1) (2019) and -2101(A)(1) (2019).

## DISCUSSION

**¶13**      We defer to the superior court's factual findings after a bench trial "unless clearly erroneous, giving due regard to the opportunity of the court to judge the credibility of witnesses." *Castro v. Ballesteros-Suarez*, 222 Ariz. 48, 51, ¶ 11 (App. 2009) (quotation omitted). We do not weigh the evidence or determine witnesses' credibility; instead, "our duty begins and ends with inquiring whether the trial court had before it evidence reasonably supporting its action viewed in the light most favorable to sustaining the findings." *Imperial Litho/Graphics v. M.J. Enters.*, 152 Ariz. 68,

72 (App. 1986). We review issues of law, however, *de novo*. *Castro*, 222 Ariz. at 52, ¶ 12.

¶14 Additionally, we review a superior court's denial of a motion for new trial for an abuse of discretion. *Styles v. Ceranski*, 185 Ariz. 448, 450 (App. 1996). We will reverse an order denying a new trial "only if it reflects a manifest abuse of discretion given the record and circumstances of the case." *Id.*

## A. Perfect Pint's Distributions to Bonnett and Madison.

¶15 Bonnett and Madison contend the distributions they received from Perfect Pint – the $61,054 in distributions and the $358,572 Boer Note – are not fraudulent transfers because Perfect Pint is not a debtor under the stipulated judgment, as required by the fraudulent transfer statute, A.R.S. § 44-1004(A).

¶16 Under § 44-1004(A)(1), a "transfer made or obligation incurred by a debtor is fraudulent as to a creditor . . . if the debtor made the transfer or incurred the obligation . . . [w]ith actual intent to hinder, delay or defraud any creditor of the debtor." On appeal, Bonnett and Madison do not dispute that the transfers were made with the intent to hinder, delay or defraud Moirbia. They argue only that the transfer could not be fraudulent because Perfect Pint was not a debtor.

¶17 A "transfer" is defined as "every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with an asset or an interest in an asset." A.R.S. § 44-1001(9) (2019). This broad definition of a "transfer" includes any transaction in which a property interest is relinquished. *State ex rel. Indus. Comm'n v. Wright*, 202 Ariz. 255, 257, ¶ 8 (App. 2002).

¶18 Bonnett and Madison's receipt of the Boer Note and the $61,054 in distributions stems from the assignment to them of the Management Interest in Perfect Pint. The holder of the Management Interest was entitled to receive 50% of Perfect Pint's distributions and, pursuant to that right, acquired the Boer Note as its share of the proceeds of the sale of Tempe Pub to Boer. Without the Management Interest assignment, Bonnett and Madison would not have received the Boer Note or the $61,054 in distributions.

¶19 The Management Interest was a valuable asset that Goumas and Pub Company divested when they assigned it to Bonnett and Madison. The assignment of the Management Interest was a fraudulent transfer and

the distributions resulting from that fraudulent transfer rightfully belong to Moirbia.

**B.** **The Value of the Boer Note.**

**¶20** The superior court found the Boer Note was valued at $358,572 at the time of the transfer. Bonnett and Madison argue the value of the Boer Note should be reduced to $50,333.21, the amount actually distributed under the Boer Note. The court's valuation of the Boer Note of $358,572 at the time of the fraudulent transfer, however, has support in the record and is not clearly erroneous. *Castro*, 222 Ariz. at 51-52, ¶ 11.

**¶21** Under A.R.S. § 44-1008(B) and (C) (2019), Moirbia can recover the value of the asset fraudulently transferred, and the resulting "judgment must be for an amount equal to the value of the asset at the time of the transfer." There is ample evidence to support the court's finding that the value of the Boer Note at the time of the transfer was $358,572. Perfect Pint's 2012 Schedule K-1 valued the Boer Note at $358,572. Additionally, Goumas testified that he anticipated the Boer Note would be repaid in full, and the debtor testified he anticipated paying back the note. Thus, the court did not err.

**C.** **Apportionment of Liability for the Transfers.**

**¶22** Bonnett and Madison further argue the $61,054 in distributions and Boer Note were transferred to Madison, not Bonnett, and, therefore, Bonnett should not be held liable jointly and severally for those distributions. The superior court found that the Management Interest was transferred to Bonnett and Madison. The court also found that pursuant to the transfer of the Management Interest, Bonnett and Madison received the economic rights associated with that interest, and determined that the $61,054 in distributions were made pursuant to the Management Interest.

**¶23** The evidence supports the superior court's findings. The Management Interest was transferred from Goumas and Pub Company to *both* Bonnett *and* Madison. In other words, because both Bonnett and Madison were transferees of the Management Interest, both are liable for the value of the assets acquired as a result of the fraudulent transfer. The court therefore did not err in holding Bonnett and Madison, the assignees of the Management Interest, liable for the resulting damages.

**¶24** Finally, Bonnett and Madison contend that the judgment must be amended to reflect that Bonnett is solely liable for the $90,609 in distributions made to her. Moirbia conceded that Bonnett was the sole

transferee of the $90,609 in assigned checks and does not dispute that the judgment should be amended to reflect Bonnett as solely liable for those transfers. Thus, we vacate the judgment and remand to the superior court to enter an amended judgment recognizing that Bonnett is solely liable for the $90,609 in fraudulently transferred checks from Goumas and his related entities.

## CONCLUSION

**¶25** For the foregoing reasons, we affirm the judgment in part and remand the matter to the superior court so that it may amend the judgment to apportion $90,609 of the damages solely to Bonnett.



AMY M. WOOD • Clerk of the Court
FILED: AA