NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

# IN THE
# ARIZONA COURT OF APPEALS
## DIVISION ONE

BRIAN SYMONS, *Plaintiff/Appellant*,

*v.*

PJO INSURANCE BROKERAGE LLC, *Defendant/Appellee*.

No. 1 CA-CV 18-0477
FILED 7-16-2019

Appeal from the Superior Court in Maricopa County
No.  CV2016-001029
CV2017-055421
(Consolidated)
The Honorable Teresa A. Sanders, Judge

**AFFIRMED**

COUNSEL

Breyer Law Offices PC, Phoenix
By Mark P. Breyer, Brian C. Fawber, Edward M. Ladley
*Counsel for Plaintiff/Appellant*

Resnick & Louis PC, Scottsdale
By Roger W. Strassburg, Jr.; Mitchell J. Resnick; Sharon A. Biggs
*Counsel for Defendant/Appellee*

---

**MEMORANDUM DECISION**

Presiding Judge Jennifer B. Campbell delivered the decision of the Court, in which Judge Maria Elena Cruz and Judge James B. Morse Jr. joined.

---

**C A M P B E L L**, Judge:

¶1          Brian Symons appeals the superior court's denial of his motion for a new trial and entry of judgment in favor of PJO Insurance Brokerage, LLC. For the following reasons, we affirm.

## BACKGROUND

¶2          Symons was employed by DE Electricians ("DE"). DE is a subcontractor hired by general contractor Black Stone Development, LLC ("Black Stone") to perform electrical work on a residential property. Symons was seriously injured on the job site when a wooden board acting as a ramp collapsed, causing him to fall four feet to the ground. Symons filed a negligence suit against Black Stone for the injuries he sustained in his fall on the Black Stone construction site. A jury found Black Stone largely liable for Symons' injuries.

¶3          At the time of the accident, Black Stone was insured by Lloyd's of London under a commercial general liability policy (the "Lloyd's Policy"). Black Stone purchased this policy through an insurance broker, PJO Insurance Brokerage, LLC ("PJO"). Black Stone also required its subcontractors to obtain commercial general liability insurance and to name Black Stone as an additional insured. DE and Black Stone signed a subcontractor agreement, whereby DE agreed to indemnify Black Stone against all claims and add Black Stone as an additional insured to its insurance policy. At the time of the accident DE was insured through Occidental Fire & Casualty (the "DE Policy"), on which Black Stone was named as an additional insured.

¶4          Upon service of Symons' lawsuit, Black Stone notified Lloyd's of London of the claim and asked DE to notify its insurance carrier of the claim. Black Stone's owner testified that DE's insurance carrier declined to represent Black Stone. Lloyd's of London denied coverage because the Lloyd's Policy had an exclusion for injuries to subcontractors or their employees. Black Stone then assigned any causes of action it may have

against PJO under the Lloyd's Policy to Symons, and Symons agreed not to execute on the judgment against Black Stone. Symons subsequently filed suit against PJO.

**¶5** Symons alleged PJO was negligent for falling below the standard of care for insurance brokers by issuing Black Stone an insurance policy that excluded coverage for injuries to subcontractors and employees of subcontractors. He further alleged PJO fell below the applicable standard of care when its agent failed to explain the subcontractor exclusion to Black Stone when he issued the Lloyd's Policy.

**¶6** Four weeks before trial was set to begin—and after the discovery deadline—PJO disclosed the DE Policy in a supplemental disclosure and indicated its intention to use that policy at trial. Symons filed a motion in limine to prohibit the use of the untimely disclosed DE Policy. PJO argued to the court that it intended to use the policy to illustrate the industry practice of transferring risk between sub- and general contractors, whereby general contractors purchase less expensive coverage with exclusions and fill exclusions in their insurance policies with coverage requirements in the polices of subcontractors. PJO further argued that because Black Stone required its subcontractors to name it as an additional insured on their policies, it was likely that Black Stone knew or assumed that its subcontractors would be covered by at least one insurance policy. As a result, PJO claimed it was not negligent in issuing Black Stone a policy with the subcontractor liability exclusion. The court denied Symons' motion in limine and allowed PJO to reference the DE Policy at trial.

**¶7** At trial, PJO attempted to use the DE Policy not only to explain the transfer of risk, but also to argue it was not liable to Symons because Black Stone failed to mitigate its damages. PJO asserted Black Stone should have made a claim through the DE Policy, which would have covered damages for Symons' injuries. After PJO made this argument to the jury, Symons filed a motion to preclude further argument about the DE Policy. The court explained that whether the DE Policy provided coverage is a question of law for the court to decide and was not relevant to the issues before the jury—namely whether PJO was negligent in issuing Black Stone a policy of insurance as a general contractor that excluded coverage of subcontractors working on its jobsites. The court then precluded the parties from eliciting testimony or arguing in closing statements about whether the DE Policy would have provided coverage; it did not preclude all mention of the DE Policy. The DE Policy was not admitted as an exhibit at trial.

¶8 Because testimony about whether the DE Policy provided coverage had been elicited during trial, the court gave a curative instruction that read:

> In reaching your verdict, you should not consider, or discuss, whether Black Stone Development was or was not covered by insurance from any other insurance company in connection with this matter, or whether or not Black Stone Development pursued a claim with any other insurance company in connection with this matter. This issue has no bearing on the matters before you for your consideration.

¶9 The jury returned a verdict in favor of PJO. Symons filed a motion for a new trial, arguing he was denied a fair trial because of PJO's references to the DE Policy during the trial. *See* Ariz. R. Civ. P. ("Rule") 59(a)(1). After a hearing, the court denied the motion and entered judgment in favor of PJO. Symons timely appealed.

## DISCUSSION

¶10 On appeal, Symons argues the trial court committed reversible error by allowing use of the DE Policy even though it had been disclosed after the disclosure deadline and allowing PJO to refer to the DE Policy at trial. Symons also alleges the trial court abused its discretion by denying his motion for a new trial.

¶11 We begin with the premise that trial judges are in a unique position and are "better able . . . to decide if a disclosure violation has occurred in the context of a given case and the practical effect of" such a violation. *Solimeno v. Yonan*, 224 Ariz. 74, 77, ¶ 9 (App. 2010). As a result, the superior court has broad discretion in ruling on discovery matters and this court will not disturb an evidentiary ruling absent a clear abuse of discretion. *Marquez v. Ortega*, 231 Ariz. 437, 441, ¶ 14 (App. 2013). We similarly review the court's denial of a motion for new trial for abuse of discretion. *First Fin. Bank, N.A. v. Claassen*, 238 Ariz. 160, 162, ¶ 8 (App. 2015). A court abuses its discretion when it commits an error of law or fails to consider evidence in reaching a discretionary conclusion. *Flying Diamond Airpark, LLC v. Meienberg*, 215 Ariz. 44, 50, ¶ 27 (App. 2007).

**I.    The superior court did not abuse its discretion in allowing PJO to introduce evidence about the DE Policy, despite its untimely disclosure.**

**¶12**        Symons argues the superior court incorrectly applied Arizona Rules of Civil Procedure 26.1(f)(2), 37(c)(1), and 37(c)(4).[1] Rule 26.1 requires each party to disclose a list of all relevant documents in a disclosure statement and to serve with the statement a copy of each document listed. *See* Ariz. R. Civ. P. 26.1(a)(9).[2] "The purpose of the disclosure requirements of . . . Rule 26.1 is to ensure that all parties are fairly informed of the facts, legal theories, witnesses, documents, and other information relevant to the action." Ariz. R. Civ. P. 26.1(e)(1). PJO claims it disclosed the DE Policy in April 2017, months before the discovery deadline, but that earlier disclosure did not include a supplemental disclosure statement and, thus, PJO did not comply with Rule 26.1. Instead, PJO's June 2017 purported "disclosure" of the DE Policy occurred when PJO attached the DE Policy as an exhibit to a motion to serve a third-party complaint on Black Stone and Black Stone's attorney.

**¶13**        Symons argues that PJO did not properly disclose the DE Policy and by attaching it as an exhibit to the third-party motion, it appeared that PJO planned to use the DE Policy only to get the third parties into the case, not as a defense to the lawsuit. Therefore, Symons asserts the court should have precluded any other use of the document and the information contained therein. While we agree that the policy was not properly disclosed, we cannot say the court abused its discretion in allowing PJO to question witnesses about the existence of the DE Policy.

**¶14**        Under Rule 37(c)(1), late-disclosed information may not be used unless the court finds that failure to timely disclose the information "caused no prejudice or orders otherwise for good cause." Rule 26.1(f)(2) states that "[a] party seeking to use information that it first disclosed later than the deadline set in a Scheduling Order . . . must obtain leave of court to extend the time for disclosure as provided in Rule 37(c)(4)." To obtain

---

[1]    Symons urges this court to review the superior court's allowance of reference to the DE Policy de novo. Because we are simply reviewing the superior court's application of Rules 26.1(f)(2), 37(c)(1), and 37(c)(4), rather than interpreting these rules, we review for an abuse of discretion.

[2]    The Arizona Rules of Civil Procedure were amended in 2017 and 2018, after the trial in this case. Because there is no material difference between the relevant Rules in effect at trial and after the amendments, we cite to the current version.

leave of the court, a party must file a motion, supported by affidavit, to extend the time for disclosure, illustrating that "(A) the information . . . or document would be allowed under the standards of Rule 37(c)(1); and (B) the party disclosed the information . . . or document as soon as practicable after its discovery." Ariz. R. Civ. P. 37(c)(4).

¶15            In response to Symons' motion in limine to exclude the DE Policy, PJO filed a motion to extend time for disclosure. The court heard argument about whether to preclude PJO from eliciting testimony about the DE Policy at trial. PJO argued the existence of the DE Policy was relevant to the question of whether PJO was negligent in procuring the Lloyd's Policy for Black Stone because there is a standard industry practice of general contractors requiring subcontractors to obtain insurance and name general contractors as additional insureds on the policy. PJO argued Black Stone was aware of this practice as evidenced by the subcontractor agreement with DE, requiring DE to obtain commercial general liability insurance and name Black Stone as an additional insured.

¶16            After PJO's argument on how it intended to use the DE Policy at trial, the court stated, "even if I deny the motion to exclude based upon late disclosure, there might still be other reasons on the merits to deny the admission of the evidence." The court subsequently denied Symons' motion to preclude the DE Policy and granted PJO's motion to extend time for disclosure, thereby preliminarily allowing evidence of the existence of the DE Policy to be admitted.

¶17            Although the superior court did not make an explicit finding that failure to disclose the DE Policy caused no prejudice or order otherwise for good cause, "we may infer additional findings of fact and conclusions of law sufficient to sustain the trial court's order as long as those findings are reasonably supported by the evidence, and not in conflict with any express findings." *Johnson v. Elson*, 192 Ariz. 486, 489, ¶ 11 (App. 1998). As the superior court explained, evidence of the industry standard of having subcontractors supply their own insurance to fill exclusions in general contractors' policies went directly to the issue of whether PJO violated the standard of care in issuing the Lloyd's Policy to Black Stone. The court did not admit evidence of the DE Policy to show whether it provided coverage—and in fact expressly instructed the jury not to consider whether other policies existed that could have covered Symons' claims. Rather, the court considered the relevance of the existence of the DE Policy in light of the issues before the jury—namely whether PJO violated the standard of care in issuing this policy—and evidence supports the conclusion that there was good cause to allow reference to the existence of the policy despite its

untimely disclosure. Symons' own expert testified that he was unaware of the existence of any insurance policies issued to general contractors that did not have similar exclusions to the policy issued to Black Stone by PJO. Accordingly, the court did not abuse its discretion in granting PJO's motion to extend time for disclosure or in finding the existence of the policy relevant.

**II.     The superior court did not abuse its discretion when it denied Symons' request for a new trial.**

**¶18**     Symons next argues the court erred in denying his motion for a new trial because the references at trial to the DE Policy were unfair and caused the jury to become confused. Under Rule 59(a)(1), the superior court may grant a new trial if a party's rights are materially affected by any of the grounds set forth in the Rule. Symons alleges he is entitled to a new trial because (1) the verdict is not supported by the evidence or is contrary to law under Rule 59(a)(1)(H); (2) the court erred in the admission of evidence under Rule 59(a)(1)(F); and (3) he was deprived of a fair trial under Rule 59(a)(1)(A).

**¶19**     We will affirm a ruling on a motion for a new trial challenging the sufficiency of the evidence if there is substantial evidence supporting the court's determination. *State v. Fischer*, 242 Ariz. 44, 48, ¶¶ 11-12 (2017); *see Walsh v. Advanced Cardiac Specialists Chartered*, 229 Ariz. 193, 197, ¶ 15 (2012) (explaining the trial judge "has broad discretion to find the verdict inconsistent with the evidence and grant a new trial"). Evidence is substantial if it allows "a reasonable person to reach the [jury's] result." *Castro v. Ballesteros-Suarez*, 222 Ariz. 48, 52, ¶ 11 (App. 2009) (citation omitted). "We will not reweigh the evidence or substitute our evaluation of the facts," *id.*, nor will we reverse or vacate the court's ruling merely because "there is a dispute in the evidence from which reasonable [people] could arrive at different conclusions as to the ultimate facts," *Spain v. Griffith*, 42 Ariz. 304, 305 (1933).

**¶20**     After hearing oral argument, the court explained it precluded evidence about the DE Policy coverage because it was not relevant to Symons' claims and there was a likelihood that the jurors may equate the DE Policy with potential alternative coverage for Symons' injury. However, the court also explained the DE Policy could not be excluded altogether because the existence of the policy was relevant to determining the standard of care and whether PJO breached the standard of care by not properly advising Black Stone that injuries to subcontractors were not covered by the Lloyd's Policy.

¶21  The jury's verdict was supported by ample evidence presented at trial. The agent for PJO testified that the exclusion in the Lloyd's Policy for claims for subcontractors and their employees was explained to Black Stone. Moreover, Black Stone's owner admitted that he did not read the Lloyd's Policy before purchasing it. The jurors had to determine witness credibility and find the facts based on the evidence. *See Fischer*, 242 Ariz. at 51, ¶ 26; *Spain*, 42 Ariz. at 305. In so doing, they found no negligence on the part of PJO in the issuance of the Lloyd's Policy. Because there is evidence that supports the verdict, the court did not abuse its discretion by denying the motion for a new trial on the ground that the verdict was against the weight of the evidence. *See* Ariz. R. Civ. P. 59(a)(1)(H).

¶22  Neither did the court abuse its discretion in denying the motion for a new trial on the ground that Symons was deprived a fair trial, nor on the ground that the court erred in admitting evidence of coverage under the DE Policy. First, the DE Policy was not admitted into evidence and the curative instruction precluded the jury from considering whether it provided coverage. Second, to the extent the jury was confused about whether the DE Policy actually provided coverage, the court gave an instruction to the jury that (1) this case was about professional negligence and (2) the jurors were not to consider whether Black Stone had any other insurance available to it or whether it had pursued a claim with any other insurance provider. We presume that jurors follow jury instructions in reaching a verdict. *State v. Prince*, 226 Ariz. 516, 537, ¶ 80 (2011). The DE policy was only relevant and considered in the context of whether PJO was negligent in issuing a policy that excluded subcontractors. Accordingly, the superior court did not abuse its discretion in denying Symons' motion for a new trial.

## CONCLUSION

¶23  For the foregoing reasons, we affirm the judgment in favor of PJO.



AMY M. WOOD • Clerk of the Court
FILED:  AA