NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

KRYSTLE M., *Appellant*,

*v.*

DEPARTMENT OF CHILD SAFETY, C.M., G.M., *Appellees*.

No. 1 CA-JV 19-0013
FILED 11-14-2019

Appeal from the Superior Court in Mohave County
No. L8015JD201707014
The Honorable Derek C. Carlisle, Judge

**AFFIRMED**

COUNSEL

The Stavris Law Firm PLLC, Scottsdale
By Alison Stavris
*Counsel for Appellant*

Arizona Attorney General's Office, Mesa
By Tom Jose
*Counsel for Appellee Department of Child Safety*

---

**MEMORANDUM DECISION**

---

Presiding Judge Samuel A. Thumma delivered the decision of the Court, in which Judge Jennifer M. Perkins and Judge Paul J. McMurdie joined.

---

**T H U M M A**, Judge:

¶1        Krystle M. (Mother) challenges the superior court's order terminating her parental rights to her biological children C.M. and G.M. Because Mother has shown no error, the order is affirmed.

### FACTS AND PROCEDURAL HISTORY

¶2        Mother has a history of behavioral health issues and suffers from complex posttraumatic stress (PTSD) and attention-deficit/hyperactivity (ADHD) disorders. Mother and the children lived in Oregon, where Mother pursued mental-health counseling through the New Perspectives Center. Despite her counseling, Mother refused medication for PTSD, anxiety and depression. When triggered, Mother becomes aggressive and hostile, vacillating between intense anger, frustration and hopelessness. Before 2016, Mother learned C.M. was being harassed at school, which triggered a major PTSD episode for Mother, and due to several other stressors, Mother's mental health declined.

¶3        In April 2016, Mother's counselor recommended reducing her college workload, and in June 2016, Mother was fired from her job because she was "volatile and argumentative and used profanity . . . during the training." At that time, Mother was also facing charges of reckless driving and child endangerment (stemming from a feud with her neighbors) and a related child neglect investigation by the Oregon Department of Human Services.[1] Around this time, Mother sent the children to live with their grandmother in Arizona. Mother remained in Oregon. A few months later, Mother lost her housing and had to stay with various friends or, at times, lived in her car.

¶4        In Arizona, when Mother had not sought custody of the children by April 2017, the Department of Child Safety (DCS) investigated.

---

[1]The charges were eventually dismissed, and the neglect allegations determined to be unsubstantiated.

Mother admitted prior methamphetamine use and a lack of income or housing. Based on disclosures by C.M., DCS also expressed concerns that Mother was not adequately treating her mental health. Consequently, DCS took custody of the children and filed a dependency petition in April 2017. In March 2018, after several days of evidentiary hearings, the court found the children dependent as to Mother and adopted a family reunification case plan.

¶5        Meanwhile, DCS provided Mother with services, including substance-abuse testing, a psychological evaluation and visitation. DCS also asked Mother to continue engaging in mental-health services in Oregon. Regarding substance abuse, Mother refused to submit to a rule-out drug test until 2018. Mother refused a hair follicle test in February and tested positive for methamphetamine in May and June 2018. Mother then stopped testing. Despite her positive tests, admissions to her counselor and failing to test, Mother denied any recent use to DCS and the court.

¶6        Mother's mental health did not improve during the dependency. Although her mental-health providers repeatedly recommended antidepressant medication, Mother consistently refused it. She continued to struggle with severe anger, frustration and hopelessness and remained combative and verbally abusive in stressful situations. She also periodically struggled with suicidal thoughts. After getting fired in June 2016, Mother did not obtain another job, and she did not establish stable housing after October 2016.

¶7        In May 2018, Mother completed two psychological evaluations, one with Dr. Martha Wang and another with Dr. Paul Stoltzfus. Dr. Wang diagnosed Mother with PTSD and major depressive disorder. Dr. Stoltzfus diagnosed Mother with PTSD; major depressive disorder; persistent depressive disorder; generalized anxiety disorder; somatization disorder; ADHD; and schizoid, masochistic, paranoid, and schizotypal personality traits. Dr. Stolzfus concluded that Mother's mental disorders would "have a significant negative impact on her ability to parent her children," and he recommended that she take psychotropic medication.

¶8        In July 2018, the court changed the case plan to severance and adoption, and DCS moved to terminate Mother's parental rights based on neglect, mental illness, substance abuse and nine- and fifteen-months time-in-care. A contested severance adjudication followed, resulting in the court granting the motion on all grounds alleged, except neglect. This court has jurisdiction over Mother's timely appeal pursuant to A.R.S. §§ 8-235(A), 12-

120.21(A)(1), -2101(A)(1), and Arizona Rule of Procedure for the Juvenile Court 103(A) (2019).[2]

**DISCUSSION**

**¶9**        As applicable here, to terminate parental rights, a court must find by clear and convincing evidence that at least one statutory ground articulated in A.R.S. § 8-533(B) has been proven and must find by a preponderance of the evidence that termination is in the best interests of the child. *See Kent K. v. Bobby M.*, 210 Ariz. 279, 288 ¶ 41 (2005); *see also Michael J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 246, 249 ¶ 12 (2000). Because the superior court "is in the best position to weigh the evidence, observe the parties, judge the credibility of witnesses, and resolve disputed facts," this court will affirm an order terminating parental rights so long as it is supported by reasonable evidence. *Jordan C. v. Ariz. Dep't of Econ. Sec.*, 223 Ariz. 86, 93 ¶ 18 (App. 2009) (citations omitted).

**I.        Reasonable Evidence Supports the Superior Court's Finding that Termination was Proper Based on Fifteen-Months Time-In-Care.**

**¶10**        When seeking termination based on fifteen-months time-in-care, DCS must prove that it "made a diligent effort to provide appropriate reunification services" to the parent. A.R.S. § 8-533(B)(8). DCS must show that it provided the parent with "the time and opportunity to participate in programs designed to help her become an effective parent." *In re Maricopa Cty. Juv. Action No. JS-501904*, 180 Ariz. 348, 353 (App. 1994). DCS need not "provide every conceivable service or . . . ensure that a parent participates in each service it offers." *Id.* DCS must also prove that (1) "the child has been in an out-of-home placement for a cumulative total period of fifteen months or longer," (2) "the parent has been unable to remedy the circumstances that cause the child to be in an out-of-home placement, and [(3)] there is a substantial likelihood that the parent will not be capable of exercising proper and effective parental care and control in the near future." A.R.S. § 8-533(B)(8)(c). The "circumstances" are those "existing at the time of the severance that prevent a parent from being able to appropriately provide" for her child. *Jordan C.*, 223 Ariz. at 96 ¶ 31 n.14 (citation omitted).

**¶11**        Here, Mother was unable to remedy her substance-abuse, mental-health, income and housing issues by the termination hearing. Mother knew that these were the issues she needed to remedy before the

---

[2] Absent material revisions after the relevant dates, statutes and rules cited refer to the current version unless otherwise indicated.

court would reunify her and the children. Although DCS provided, and Mother agreed to participate in, drug testing, she refused to submit to a drug test until 2018—almost a year into the dependency. When she finally tested, she tested positive for methamphetamine. Mother then refused to submit to further testing, and she did not pursue substance-abuse treatment, despite encouragement by DCS. Instead, Mother consistently denied to DCS that she had any substance-abuse issues.

¶12         Mother admitted methamphetamine use during one of her psychological evaluations and to her counselor in Oregon. In February 2018, Mother told her counselor that "she sometimes has to use meth to be able to focus and get anything done," but denied being addicted, stating instead that methamphetamine was "just a stronger version of my ADHD medicine." At trial, however, Mother testified that she had not used methamphetamine since 2008 and that her positive tests resulted from allergy or ADHD medication.

¶13         Mother failed to adequately address her mental-health issues. As early as June 2016, Mother's therapist "expressed genuine concern that [Mother's] mood and mental equilibrium [was] spiraling out of control," and Mother agreed but "place[d] the blame outside of herself." Her therapist emphasized the need for antidepressant medication, but Mother told her "she will never yield on th[at] issue." A few weeks later, Mother's therapist noted "how close to truly losing-it [Mother] seems to be." Over the next twenty months, Mother's therapists repeatedly urged her to consider antidepressant medication as part of her ongoing treatment, but she refused; consequently, her mental-health and behavioral issues did not improve.

¶14         The record shows Mother had significant conflict with many in her life after 2015, including her neighbors, children's school district, employers, mother, boyfriends, DCS, the court and her attorneys. In times of hopelessness, Mother often had suicidal thoughts and periodically threatened to kill herself. She was still expressing suicidal intent at the time of the termination trial.

¶15         Finally, Mother was unable to maintain stable housing or income. She remained unemployed after June 2016. Mother's only income at the time of the termination hearing came from selling items online. Mother's counselor described her condition as of May 2018 as "too distraught and overwhelmed to work" and "homeless," emphasizing Mother "has gotten involved in a couple of unhealthy and [] unsafe relationships, to keep from being a homeless woman." Mother lost her

housing around August 2016, and by November, she was sleeping in her car. Between November 2016 and August 2018, Mother lived out of her car and with friends or boyfriends, many of whom had mental-health or substance-abuse issues and criminal records. By the time of trial, Mother was living in a basement in exchange for performing maintenance on the home.

¶16        Reasonable evidence also supports the court's finding that a substantial likelihood exists that Mother will not be capable of exercising proper and effective parental care and control in the near future. At the time of trial, Mother's substance-abuse, mental health, and instability were ongoing issues, each of which placed the children at risk of physical, emotional, or mental harm if returned to her care. Citing these reasons, the DCS case manager concluded that Mother would be unable to safely parent the children in the foreseeable future. The case manager's opinion coincides with that of Dr. Stolzfus, who concluded that

> [Mother] is far from minimally capable of parenting her children at this time. Her own personal life is in chaos. She is able to talk rationally for a period of time, but quickly slips into a completely paranoid and irrational mindset, along with significant emotional decompensation. Without adequate treatment, to which she is adamantly opposed, it is doubtful she is able to parent her children at this time, or in the foreseeable future.

He further explained that the children would be at risk of harm in her care, especially because she "is often irrational and agitated" and although she "can have times of normal and logical thinking, she triggers easily and immediately trips into a mental state characterized by paranoia, distortion, and fear."

¶17        Mother next argues the court erred in finding DCS made a diligent effort to provide her with appropriate reunification services, citing DCS's failure to refer her for substance-abuse treatment in Oregon or a psychiatric evaluation, the short-lived Skype visits between her and the children, and DCS' failure to timely obtain her counseling records.

¶18        The record does not support Mother's contentions. Based on her refusal to acknowledge her methamphetamine use, the court found that offering Mother substance-abuse treatment would have been futile.

Throughout the dependency, Mother refused to participate in almost all drug testing, and she adamantly denied any substance abuse (other than marijuana), even after multiple, positive methamphetamine test results. Additionally, after admitting her methamphetamine use to her counselor in Oregon, Mother minimized her substance abuse, denying that she was addicted or that it caused any issues in her life.

¶19 Mother waived any objection to DCS' failure to provide her with a psychiatric evaluation because she failed to raise this issue in superior court. *See Shawanee S. v. Ariz. Dep't of Econ. Sec.*, 234 Ariz. 174, 178 ¶ 13 (App. 2014). Even if she had not waived this argument, Mother suggests only that the psychiatric evaluation may have suggested helpful medication for her conditions. While true, Mother received medical management services for most of the dependency through New Perspectives in Oregon, and consistently refused to take any medication other than Adderall for her ADHD. Mother also expressly rejected Dr. Stoltzfus' assessment and voiced to her counselor her "refus[al] to jump through any more of [DCS'] 'ridiculous hoops' including random [urinalysis tests] and psychiatric treatment in AZ." Thus, reasonable evidence supports the finding that additional mental-health services would have been futile based on Mother's "refusal to remedy her mental illness with medication."

¶20 Finally, Mother argues that technical difficulties with Skype prevented her from having visits with her children and that DCS was "less than diligent" in obtaining her counseling records from New Perspectives. However, the case manager testified that DCS offered Mother options other than Skype, such as phone visits and in-person visits in Arizona. Moreover, Mother fails to show how technical difficulties with her Skype visits contributed to the court's termination order, which was based on Mother's substance abuse, mental illness and instability, not on her lack of a bond with the children. Regarding her counseling records, Mother refused to sign a release allowing DCS access to most of her New Perspectives records until very late in the proceedings. At the termination hearing, the court received all of Mother's counseling records, and therefore had the full benefit of that information in making its determination. Mother has thus shown no error in the finding that DCS proved the fifteen-month time-in-care statutory ground. [3]

---

[3]Mother also challenges the termination order under the remaining grounds. However, this Court need only find that reasonable evidence

## II. Mother Has Shown No Error in the Court Finding Severance Was in the Best Interests of the Children.

**¶21** Mother argues the court erred in finding that severance was in the children's best interests. Mother asserts she properly cared for her children through the inception of this case and has been ready to parent them since that time. Mother's arguments essentially ask this Court to reweigh the evidence, which it will not do. *See Castro v. Ballesteros-Suarez*, 222 Ariz. 48, 52 ¶ 11 (App. 2009). Moreover, reasonable evidence supports the court's finding.

**¶22** "[T]ermination is in the child's best interests if either: (1) the child will benefit from severance; or (2) the child will be harmed if severance is denied." *Alma S. v. Dep't of Child Safety*, 245 Ariz. 146, 150 ¶ 13 (2018) (citation omitted). Although "the child's prospective adoption is a benefit that can support a best-interests finding," *Demetrius L. v. Joshlynn F.*, 239 Ariz. 1, 4 ¶ 16 (2016), the court "must consider the totality of the circumstances existing at the time of the severance determination," *Alma S.*, 245 Ariz. at 150-51 ¶ 13 (citation omitted).

**¶23** The DCS case manager testified that severance would provide the children with stability and permanency. The children were in a safe and stable home with their grandmother, who was meeting their needs and wished to adopt them. There is no question that Mother loves her children, but as the case manager testified, grandmother is able and willing to provide the children with the stability that Mother could not.

## CONCLUSION

**¶24** The order terminating Mother's parental rights to C.M. and G.M. is affirmed.



AMY M. WOOD • Clerk of the Court
FILED: AA

---

supports one termination ground to affirm the order. *Mary Lou C. v. Ariz. Dep't of Econ. Sec.*, 207 Ariz. 43, 49 ¶ 14 (App. 2004).